JAMES BORCHERS, Appellant, v. JOSEPH
BREWER.

Division One, June 1, 1917.

1. **PUBLIC ROAD: Dedication by Estoppel.** A common law dedication of land for use as a public road is one that operates by way of estoppel *in pais*, instead of by dedication by grant. It is a dedication that arises, by operation of law, from the acts of the owner. It need not be evidenced by writing, or by any form of words. If the owner's acts are such as indicate an unequivocal intention to appropriate the land to public use, then, upon acceptance by the public, the dedication becomes complete.

.2. ———: ———: **Facts Which Establish Public Road.** Where the road, which was not established by the county court, was, when opened and fenced in 1900, intended by the owners of the land to be a public highway; was afterwards worked by citizens and road overseers on the theory that it was a public road; was used by the public and considered a public highway down to 1911, it was a public road, and the dedicator cannot lawfully interfere with its use by the public, or recover the ground by suit.

3. ———: ———: **Consent of Other Dedicators.** Where a road entirely through a section was opened for public use in pursuance to an agreement between plaintiff, who owned the north half, and the owner of the south half, the plaintiff cannot interfere with the use by the public of the part bordering his land, without the consent of the owner of the said south half or his successors in title.

Appeal from Nodaway Circuit Court.—*Hon. William C. Ellison,* Judge.

AFFIRMED AND REMANDED.

*Hine & Cross* and *Cook, Cummins & Dawson* for appellant.

(1)   To constitute a valid dedication of land to the public there must be a clear intention on the part of the owner to dedicate, for a dedication of land to public use depends upon the intention of the owner.   Brinck v. Collier, 56 Mo. 160; Pierce v. Chamberlain, 82 Mo. 618.   There must be a clear intention to dedicate.   McGrath v. Nevada, 188 Mo. 107; State v. Hood, 143 Mo. App. 316; Vasson v. Dantel, 116 Mo. 384; Landis v. Hamilton, 77 Mo. 554; State v. Young, 27 Mo. 259; Morgan v. Durfee, 69 Mo. 463; State v. Wells, 70 Mo. 635; Price v. Breckenridge, 92 Mo., 378.   (2)   The fact that plaintiff permitted the public to use the road does not constitute a dedication. Railway Co. v. Woodlard, 60 Mo. App. 631; Coberly v. Butler, 63 Mo. App. 556; State v. Guernsey, 9 Mo. App. 314; State v. Culver, 65 Mo. 607; Stacy v. Miller, 14 Mo. 478; State v. Young, 27 Mo. 260; 13 Cyc. 483.

*Breit & Roberts* and *Shinabargar, Blagg & Ellison* for respondent.

(1)   It is admitted that to constitute a valid dedication of land to the public, there must be an intention on the part of the owner to dedicate.   Elliott on Roads and Streets (3 Ed.), p. 160, par. 138.   But the intent need not be actual, but may be only constructive, for the theory of common law dedications is referable to the equitable doctrine of estoppel.   A land-owner, even in the absence of an actual intent to dedicate, will not be permitted to deny that he has dedicated land to public use when he has induced the public, relying upon the apparent significance of his visible acts and conduct, to assume that the land has been dedicated to public use, to adjust their affairs to that supposed condition, and to act thereon to their prejudice.   Elliott on Roads and Streets (3 Ed.), p. 160; Columbus v. Dahn, 36 Ind. 330; Morgan v. Railroad, 96 U. S. 716; Indianapolis v. Kingsbury, 101 Ind. 200; Miller v. Indianapolis, 123 Ind. 196; Gillespie v. Duling, 83 N. E. (Ind.) 730; Railway v. Christie, 100 N. E. 301; Fassion v. Landrey, 123 Ind. 136; Marion v. Skillman, 127 Ind. 130.   (2)   It has been said that dedications have been established in every conceivable way by which the inten-

tion of the party could be manifested. Baker v. Vanderburg, 99 Mo. 391; Elliott on Roads and Streets (3 Ed.), p. 199; Chicago v. Railway, 152 Ill. 561.

RAILEY, C.—On March 3, 1911, plaintiff commenced, in the circuit court of Andrew County, Missouri, an action by injunction to restrain defendant from trespassing upon a strip of ground thirty feet wide, running north and south on the east side of his land, described as the southwest quarter of section 30, township 61, range 35, county and state aforesaid. After alleging repeated trespasses on the part of defendant, during the year 1909 and 1910, plaintiff asked for $500 damages, and prayed for a perpetual injunction against defendant. A temporary injunction was issued and defendant answered, alleging that on March 21, 1908, he bought and entered into possession of the northeast quarter and the west half of the southeast quarter of section 30 aforesaid; that at the time he purchased same, there was a road thirty feet in width west of and adjoining his land aforesaid, running along the entire west side of same, which said road was still there at the time of the filing of said answer; that it was a public road; that plaintiff obstructed the same by putting posts in the center thereof and at divers times stretched wire across the same; that he (defendant) removed said obstructions, in conjunction with others, as they were placed across said road during 1909 and 1910, for the purpose of clearing said public road of said obstructions. He alleges that plaintiff had an adequate remedy at law and was guilty of laches in failing to assert his alleged rights sooner. Defendant, in said answer, prayed for the dissolution of said injunction and asked the court to enter a judgment restraining plaintiff from interfering with his use of said highway and from in any manner preventing him from having free and uninterrupted egress and ingress to and from said road.

In the Spring of 1900, plaintiff was the owner of and living upon the 160 acres aforesaid. The remaining three-fourths of said section, at that time, belonged to the Samuel estate. John S. Lemon of St. Joseph and Mr. Yates

of Chicago, were executors of the Samuel estate, and had the power under the Samuel will to sell and dispose of said real estate. In 1898-9, the plaintiff lived on the northeast corner of his land. His house was then about seventy rods west of the thirty-foot road aforesaid, and about sixty roads south of the north line of his farm. The Fleming schoolhouse was located near the northwest corner of the northeast quarter of said section and a few rods east of said thirty-foot road. There was a public road running east and west along the north side of said section 30, and another public road running east and west along the south side of same. Plaintiff lived in said school district. There were two churches north and within two miles of the north line of said section. The nearest road running north and south *west* of said thirty-foot road was about one mile distant, and the nearest north-and-south road on the east was about three fourths of a mile from said thirty-foot road. Plaintiff had minor children who attended the Fleming school, and in going there, had to pass over a portion of the Samuel estate, then in pasture, where cattle were kept. It was important for plaintiff to obtain a roadway north, and he, in conjunction with others, attempted to have a public road opened north and south through the center of said section 30 and through the center of the section south of section 30. A petition was presented to the county court, asking for the establishment of said two-mile public road, the north mile of which corresponds with the thirty-foot road in controversy. The county court refused to establish said two mile road, unless the petitioners therefor would secure the right of way. They failed to secure same, and said project was abondoned. Thereupon, plaintiff, in 1899, opened up negotiations with Mr. Lemon, as executor of the Samuel estate, for the construction of the thirty-foot road as it now stands. Plaintiff read in evidence a letter from executor Lemon, which will be considered in the opinion.

It appears from the evidence that in the Spring of 1900, plaintiff, after receiving the above letter from Lemon, and after having personally talked with him, in regard to opening the road in controversy, proceeded to

construct a good and substantial fence on each side of his said road, as it runs north and south on the east side of his quarter section. He likewise built a bridge on said portion of road, and put the *latter* in good condition for public travel. George Violett, in behalf of the Samuel estate, extended the road in controversy, thirty feet in width, on the east side of the northwest quarter of said section 30, and built a good and substantial fence on each side of same. The plaintiff and Samuel estate thus constructed a thirty-foot road and put the same in good condition, immediately west of the center section line running north and south through section 30 aforesaid, and this constitutes the mile of road in controversy here.

Plaintiff testified that in the fall of 1900 he put a wire across the thirty-foot road on the east side of his farm to let his stock eat the grass on said land, but only kept the wire there for one day and removed it himself. It is not claimed that anyone else ever saw this wire or knew that it was placed as above.

About the year 1905 plaintiff removed his residence to the southeast corner of his farm, near the public road running east and west, and about fifty-five rods west of the road in controversy. All of his children, except one, were then past the school age. The plaintiff, his family and the public in general used the thirty-foot road clear through section 30 aforesaid, from 1900, when it was first opened, up to 1905, *without objection* upon the part of plaintiff or any one else, and said road was used by the public thereafter, up to time of trial below. Portions of the land formerly owned by the Samuel estate were sold at different times, and the purchasers thereof constructed houses along the road in controversy, and used the same in passing north and south over said section. After the plaintiff had removed his residence from the northeast corner of his farm to the southeast corner of same, and after his children had ceased to attend the Fleming school, he thereafter concluded to close up the road in question, by fencing same and placing obstructions thereon. These obstructions were removed by defendant and others as

often as they were installed. Thereupon the present action was brought by plaintiff, and cross-petition filed by defendant.

Such other questions as may be necessary will be considered in the opinion.

The trial court found the issues against the plaintiff on the latter's case, and entered its judgment in favor of respondent. The court likewise found the issues on behalf of defendant, as to the latter's cross-petition, and perpetually enjoined plaintiff from obstructing or fencing across said road, and enjoined him from interfering with defendant in his use of said road or highway, or in any manner preventing defendant from having the free use of same, etc. The temporary injunction formerly issued was dissolved.

Plaintiff in due time filed his motion for a new trial, which was overruled and the cause duly appealed by him to the Kansas City Court of Appeals. The latter, over the objection of respondent, transferred the cause to this court, on the ground that the title to real estate is involved herein.

I.   The real issue in this case, when reduced to its last analysis, is whether or not the road in controversy became a public highway in the spring of 1900, when it was first opened for public use. In 1 Elliott on Roads and Streets (3 Ed.), sec. 125, the learned author correctly states the law as follows:

**Public Road: Dedication by Estoppel in Pais.**

"A distinguishing difference between a statutory and common law dedication is said to be that the former operates by way of a grant, and the latter by way of an estoppel *in pais* rather than by grant."

It is not claimed by respondent that any statutory dedication ever took place, but it is asserted that the road in controversy became a public highway in 1900, by common law dedication. Judge Elliott, in 1 Roads and Streets supra, sections 137-8, says:

"An implied dedication is one arising, by operation of law, from the acts of the owner. It may exist without

any express grant, and need not be evidenced by any writing, nor, indeed, by any form of words oral or written. It is not founded on a grant, nor does it necessarily presuppose one, but it is founded on the doctrine of equitable estoppel. As said by the Supreme Court of the United States, 'the law considers it in the nature of an estoppel *in puis,*' and holds it irrevocable. It may be established by evidence of conduct, and in many ways. In one case it was declared that: 'The authorities show that dedications have been established in every conceivable way by which the intention of the party could be manifested.' If the donor's acts are such as indicate an intention to appropriate the land to the public use, then, upon acceptance by the public, the dedication becomes complete.

"It is essential that the donor should intend to set the land apart for the benefit of the public, for it is held, without contrariety of opinion, that there can be no dedication unless there is present the intent to appropriate the land to the public use. If the intent to dedicate is absent, then there is no valid dedication. The intent which the law means, however, is not a secret one, but is that which is expressed in the visible conduct and open acts of the owner. The public, as well as individuals, have a right to rely on the conduct of the owner as indicative of his intent. If the acts are such as would fairly and reasonably lead an ordinarily prudent man to infer an intent to dedicate, and they are so received and acted upon by the public, the owner cannot, after acceptance by the public, recall the appropriation. Regard is to be had to the character and effect of the open and known acts, and not to any latent or hidden purpose. If the open and known acts are of such a character as to induce the belief that the owner intended to dedicate the way to public use, and the public and individuals act upon such conduct, proceed as if there had been in fact a dedication, and acquire rights which would be lost if the owner were allowed to reclaim the land, then the law will not permit him to assert that there was no intent to dedicate, no matter what may have been his secret intent."

Many authorities are cited in the above sections, which sustain the principles of law announced therein.

In Brinck v. Collier, 56 Mo. l. c. 164-5, cited by appellant, Judge Napton said:

"To constitute a valid dedication of land to the public, there must be a clear intention on the part of the owner to dedicate, which may be established in various modes, some of which are provided by statute, and others by such acts or declarations *in pais* as are satisfactory evidence of such design; and there must be an acceptance of such dedication by the public, either by user for a length of time, more or less, according to circumstances, or by its adoption by the public authorities. Greenleaf says there must be the act of dedication and the acceptance of it by the public. 'If accepted and used by the public in the manner intended, it works as an estoppel *in pais* precluding the owner, and all claiming in his right, from asserting any ownership inconsistent with such use. The right of the public does not rest upon any grant by deed nor a twenty years' possession; but upon the use of the land with the assent of the owner for such a length of time, that the public accommodation and private rights must be materially affected by an interruption of the enjoyment.' "

To the same effect are the following authorities: Pierce v. Chamberlain, 82 Mo. l. c. 622; Perkins v. Fielding, 119 Mo. 149; McGrath v. Nevada, 188 Mo. 102-3; Minium v. Solel, 183 S. W. l. c. 1040-1 (Mo.); 1 Elliott on Roads and Streets (3d Ed.), sec. 147-8; 3 Dillon on Municipal Corporations (5 Ed.), sec. 1074, et seq.; Fossion v. Landry, 123 Ind. 136; Town of Marion v. Skillman, 127 Ind. 130; McClaskey v. McDaniel, 37 Ind. App. 59; Seidschlag v. Town of Antioch, 207 Ill. 280; Township of Lovington v. Adkins, 232 Ill. 510; Bartlett v. Beardmore, 77 Wis. 356; Cincinnati v. The Lessee of White, 31 U. S. 431; Morgan v. Railroad, 96 U. S. l. c. 723; Noyes v. Ward, 19 Conn. l. c. 265, et seq. Many other authorities are cited in the text books as announcing the same principles of law.

Turning to the record, we find that in December, 1899, the Samuel estate, of which Lemon et al. were executors, with power of sale, owned all of section 30, township 61, range 35, except the southwest quarter of same, belonging to plaintiff. The letter from Lemon to plaintiff, hereafter set out, together with the undisputed facts, indicates a clear intention upon the part of the legal representatives of the Samuel estate, to *give* the north half of the road in controversy, and to have the same opened and left open as a *public highway,* in order that the tenants and vendees of said estate might have the right to pass from said land to the east-and-west public roads on the north and south of said land. The purchasers from the Samuel estate were informed that the road in controversy was a public highway, and they built their homes fronting on said road relying upon that fact. The representatives of the Samuel estate, and their vendees of said land, always dealt with said road after it was opened as a public highway.

In 1899 plaintiff's residence was in the northeast corner of his farm, and his children could not pass north to the Fleming school, in the northwest corner of the northeast quarter of said section, without going over the land belonging to the Samuel estate, and passing through the pasture where cattle were kept. Neither was there any way for plaintiff and his family to attend either of the churches on the north of said land, without coming to the public road on the south and then traveling three-fourths of a mile east, or one mile west, where they could strike north and south roads, extending to the public road on the north side of said section. It will thus be seen that plaintiff, in 1898, was greatly in need of a road north from his house to the public road on the north. He, in conjunction with others, in said year, got up a petition to the county court, to have a *public road* opened through the centers of sections 30 and 31, township 61, range 35, for two miles. The north mile of said proposed public road covered substantially the road in dispute. There was no controversy raised about the necessity or public utility of said two mile road, but the county court refused

271 Mo.—10

to establish same, because the petitioners would not pay for the right of way. The plaintiff was then anxious to secure the present road, and opened up negotiations in December, 1899, with Lemon, executor of the Samuel estate, for the purpose of securing said road.

John Q. Fleming testified that, in 1899, plaintiff came to his residence, and induced him to go with appellant to St. Joseph to see Lemon about this road. He said to witness:

"If you will go with me to St. Joe I will pay the expenses, if you will see Mr. Lemon and　*　*　* ·if you can get him to consent to open a road on the north half I will give the road on the south half."

Witness understood it was to be a public road. This witness went to St. Joseph as requested, and testified as follows:

"I know that my trip to St. Joe was to open this road, a mile right-of-way through there, for Mr. Borchers and the general public, according to my opinion at that time. 　*　*　* Mr. Borchers says, 'I am afraid for my little boys to go through there, with them bulls and cows and everything.' 　*　*　*

"Q. He was then wanting, and you gathered from him that he at that time was making an effort to get, a public road opened through there? A. That was my opinion."

After the St. Joe interview, plaintiff received, and read in evidence, the following letter from Mr. Lemon:

St. Joseph, Mo., Dec. 18, 1899.

Mr. Jas. Borcher,
　　Rosendale, Mo.

Dear Sir:—

　　I did not hear from Mr. Yates until Saturday last. He consents to opening the road, say 30 feet wide, on the East side of the W. ½ of Section 30—Township 61—Range 35 W. on the following conditions: The road to be opened full length, say one mile, and put in good condition for travel free of expense to the estate of George W. Samuel, deceased, and before offering it to the county to be inspected and approved by myself. In the event that the county does not accept it when tendered both you and the trustees of the estate are to decide as to keeping it open and maintaining it as a private road or closing it up. If this is satisfactory you can go ahead and open it up as soon as it may

suit Mr. Violet to arrange for the fences on that part owned by the estate.

Very respectfully,

JOHN S. LEMON, Executor.

Counsel for appellant, in their brief, say:

"His efforts in that respect resulted in his finally getting the consent of Lemon to allow him to open a thirty foot way through his own land, and on north through the pasture, *upon the conditions and terms contained in the Samuel letter.*" (Italics are ours.)

Thereupon plaintiff put a good fence on each side of the road through the east side of his land, and the Samuel estate put a good fence on each side of the north half of said road. It should be observed in passing, that the agreement between Lemon and plaintiff was, that the road was "to be opened *full length,* say *one mile,* and put in good condition for travel," etc.

In the Spring of 1900, said road was well fenced on each side and put in good condition the full mile across said section. After having opened this road, as above indicated, appellant said that in the *fall* of 1900 he put a wire across the road for *one day* to let his cattle eat the grass and that he removed it.

Plaintiff was recalled in rebuttal, and testified in his own behalf as follows:

"Q. Mr. Borchers, I believe you are making no contention in this trial that, for a number of years after you opened this way, you ever attempted to keep the traveling public off of it? A. No. I never made any such contention as that. * * *"

"Q. After you and Mr. Lemon opened the road, any part of the traveling public that wanted to go through there had your permission to do so. A. Yes, sir."

The undisputed evidence discloses that from the opening of this road in 1900, up to the time of trial, the public constantly used the same without objection. We find from the record that George Violett, Grover Violett, Warren Violett, Henry H. Rankin, Hal Fleming, Will Rankin, Carl Gibson, Jule Linck, John Bruner, Edward Foland, Edgar Brewer and Ellsworth Brewer, each testi-

fied to having worked upon *some* part of the road in controversy, either at the time it was being opened or at different times thereafter. It likewise appears from the evidence that some work was done by several different *overseers* on this road, after it was opened, and that some of the witnesses *worked out* their *poll tax* on the north half of same. The witnesses who did this work understood the road was a public highway and they worked thereon accordingly.

Sometime after the opening of the road, George Violett became the owner of all that part of section 30 lying east of the road in controversy. Ellsworth Brewer and J. S. Hunt each testified that plaintiff requested him to go and see Violett about having the road moved onto the center section line and giving fifteen feet of the road. Defendant testified that plaintiff wanted *him* to set the fence over and give half the road, which he declined to do.

We have carefully read and re-read both the record and briefs in this case. Without going more into detail, we are well satisfied from the evidence that the road in controversy when it was opened in the Spring of 1900 was intended, both by plaintiff and Lemon, to be a *public highway;* that the road was worked by citizens and road overseers on the theory that it was a *public road;* that the public used said road and considered it a *public highway.* We are likewise satisfied from the evidence, that plaintiff had no thought of said road being a *private* one, until after he moved his residence to the southeast corner of his farm about 1904 or 1905, and after his children had ceased to attend the Fleming school.

We find from the evidence, that the road in controversy, has been a *public highway* ever since it was opened in the spring of 1900. The trial court was justified in finding the issues against the plaintiff and in enjoining him from interfering with defendant's use of said road.

II. The action of the trial court in refusing plaintiff any relief and in restraining him from interfering with defendant's use of said road was proper upon other grounds than those heretofore discussed. The letter from Lemon to plaintiff contemplates that a road *clear across*

*the section* was to be constructed and put in good condition for travel, for the use of both plaintiff and the Samuel estate, as well as the purchasers of the land from said estate. It is evident that the executors of the Samuel estate were contracting for a *permanent* passway from the northern portion of section 30 to the public road on the south. It is likewise manifest that the plaintiff was contracting in 1900 for a permanent way *north* over said section. The work, according to plaintiff's theory, was done pursuant to said letter. It does not appear that the Samuel estate or any of its successors in title are in favor of closing said road, but on the contrary, are opposed to its being closed. Under the contract providing for the construction of said highway, the plaintiff has no legal right to close said road. [Phelps v. Crites, 187 S. W. (Mo.) 3; Corless v. Eatherton, 187 S. W. (Mo.) 39; Bunch v. Wheeler, 210 Mo. 622; see other authorities cited in preceding proposition.]

III. On the record before us, the judgment of the trial court in behalf of defendant was for the right party; is accordingly affirmed and the cause remanded to said court.

*Brown, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All the judges concur; *Bond, P. J.,* in paragraph 3 *only* and in result.