257 S.W.2d 394 (1953)
LESLIE et al.
v.
MATHEWSON et al.
No. 7143.
Springfield Court of Appeals. Missouri.
April 9, 1953.
*395 John Hosmer, Marshfield, for appellants.
Haymes & Haymes, Marshfield, for respondents.
McDOWELL, Judge.
Action in injunction to restrain the closing of a public road. The suit originated in Webster County in the Magistrate Court where a temporary injunction was granted. In the trial in the Circuit Court, March 13, 1952, the temporary injunction was made permanent. Defendants appealed.
Plaintiffs' amended petition states that they are the owners of a farm in Webster County, describing it; that for more than 25 years plaintiffs, and their grantors, as well as the general public, have had the right to the free and unrestricted use of, under claim of right, by reason of the continued and uninterrupted use of, the acquiescence of the landowner, and by dedication thereof, as well as by performance of public labor thereon, of a right-of-way used as a road or highway, about 30 feet wide, commencing at a corner about 330 feet north of the southwest corner of defendants' land at a public highway, and thence running east about 650 feet, and thence southeasterly to the south line of defendants' land; said road then running across the land of others and continuing to plaintiffs' land. That said roadway is clearly defined and has been unimpeded at all times above referred to, by gates or other obstacles and that plaintiffs have no other practicable or feasible outlet, save over the above described roadway.
The amended petition alleges that defendants constructed a fence and placed a gate across said highway obstructing plaintiffs in the free and uninterrupted use and enjoyment of the road and, by force and threats, have prohibited anyone from using the road. Plaintiffs have no adequate remedy at law.
Defendants' amended answer admits the ownership of the land described in plaintiffs' petition and deny the allegations in the petition relating to a public road. The amended answer pleads that, in July, 1951, plaintiffs informed defendants they needed a public road by their land to secure a loan; that the county surveyor of Webster County surveyed a road right-of-way across defendants' land and defendants conveyed to Webster County said surveyed right-ofway upon the conditions that plaintiffs, or someone in their behalf, perform certain work on said road, which plaintiffs failed to fulfill and pleaded that plaintiffs are estopped to assert that this is a public road.
In the beginning we are met with a motion to dismiss defendants' appeal for failure to comply with Rule 1.08 of the Supreme Court for the reasons that the brief fails to make a fair and concise statement of the facts without argument and the points relied on, which shall specify the allegations of error with citations of authority thereunder.
An examination of appellants' brief discloses that they have violated this rule by failing to make a statement of facts in any form.
Supreme Court Rule 1.08, relating to the contents of briefs, provides that the brief shall contain:
"* * * (2) A fair and concise statement of the facts without argument; * * *."
In Walker v. Allebach, 354 Mo. 298, 189 S.W.2d 282, 283, the Supreme Court, in passing upon the failure of appellant to make a fair and concise statement of the facts relevant to questions presented for determination, made the following statement of law:
"* * * The statement of facts sets out those on which the defense is predicated, and omits the facts developed by plaintiffs' evidence, and on which they rely. Such of the facts as are stated have no page references to the transcript either in the statement or argument. The essence of the second requirement of said rule, as supplemented by paragraphs (a) and (b), is merely that it is the duty of the appellant to make a fair and concise statement of the facts relevant to the questions presented for determination, and in that connection to make specific page references to the transcript. And a statement which omits the essential facts on which an appellant's *396 adversary relies cannot be deemed a substantial compliance with said rule. * * * Thus we are left without sufficient information on which to proceed, and in the absence of any question properly before us for review, we hold the appeal should be dismissed. No good cause has been attempted to be shown for the violations noted, and as we are satisfied from a reading of the transcript, including the testimony, that the interests of justice do not require any different disposition of the case, the appeal is dismissed." Gorman v. Kauffman, Mo.App., 188 S.W.2d 70; In re Adoption of Forshey's Minor Children, 240 Mo.App. 1089, 225 S.W.2d 816; Carver v. Missouri-Kansas-Texas R. Co., Mo.Sup., 245 S.W.2d 96, 100, and cases cited therein.
Missouri Supreme Court Rule 3.27 provides:
"Plain errors affecting substantial rights may be considered * * * on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom."
The primary purpose of the code is to do justice. Section 506.010 RSMo 1949, of the Civil Code, V.A.M.S., provides that it shall be construed to secure the just, speedy, and inexpensive determination of every action. Carr Missouri Civil Procedure, Vol. II, page 24, § 853.
We think the law in Missouri now is, as set out in Carr's Missouri Civil Procedure, Vol. II, p. 26, § 853, which reads as follows:
"* * * While the Missouri Supreme Court Rule 3.27 is discretionary in its operation, such Rule considered in conjunction with the Missouri Supreme Court Rule 1.28, together with the code provisions above referred to, should result in cases under the new civil code being considered on their merits and decided upon the substantive rights of parties litigant rather than upon technical procedural questions. It is submitted that it would be an abuse of discretion for a court to refuse to act under said Rule 3.27 when plain error exists affecting substantial rights of the parties, as for example, when the evidence is insufficient to support a submitted claim or defense * * *." Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037.
Since the case is before us we deem it the obligation of the court to determine whether or not plain errors exist affecting the substantial right of the parties.
Appellants actually raise two questions. First, appellants contend that respondents had no right to bring this action to restrain the obstruction of a public road, that being a public right. Secondly, the sufficiency of the evidence to support the judgment.
In fact, appellants raise only one question and that is the right of the parties to bring this action to restrain obstructions of a public road. However, under Rule 3.27 of the Supreme Court, if the record discloses that there was insufficient evidence to establish a public road, we deem it our duty to pass upon that question.
Under the question of the right of the parties to bring this action, appellants cite Christy v. Chicago, B. & Q. R. Co., 240 Mo.App. 632, 212 S.W.2d 476, 478, which makes the following statement of law:
"There is no question but that the removal of the bridge left a deep chasm where Locust Street formerly extended over the bridge, constituting an obstruction of the street and a public nuisance, according to the allegations in the petition. However, no private individual may maintain a suit either in law or in equity as the result of the maintenance of a public nuisance. Such a situation is a matter solely for the attention of the public authorities. Cummings Realty & Investment Co. v. Deere & Co., 208 Mo. 66, 106 S.W. 496, 14 L.R.A.,N.S., 822. However, the owner of property abutting the highway at the point where the street is obstructed may maintain an action against the creator of the nuisance where he has suffered some peculiar or *397 special injury not common to the general public. In such a case the nuisance may be not only a public but a private one. However, in order to maintain an action for the nuisance it is not enough for the property owner to show that his injury is merely greater in degree than that suffered by the general public. His damage must be different in kind. (39 Am.Juris. pp. 384, 385; 25 Am.Juris, pp. 607-609.) It is well settled that an abutting proprietor has an easement of access in the street which is as much his property as the land to which it pertains. This is what is denominated an `easement of access.' * * * His right to the use of the street, in this respect, is entirely different from that of the public. However, it was held by the Supreme Court in Arcadia Realty Co. v. City of St. Louis, 326 Mo. 273, 30 S.W.2d 995, 997: `In order for a property owner to sustain an injury special or peculiar to him on account of the vacation of a street, his property or some part of it must abut on the vacated portion, or else the vacation must deprive him of reasonable access to the general system of streets.'" Union Electric Land & Development Co., v. DeGraffenreid, 229 Mo.App. 622, 78 S.W.2d 571.
Under the evidence in the case at bar respondents' land did not touch the land or the road sought to be established. There were some four 40 acre tracts of land between appellants' and respondents' land. Under the authorities above cited, respondents were not entitled to bring this action, not having suffered any special injury different in kind from the general public.
Patton v. Forgery, 171 Mo.App. 1, 153 S.W. 575, cited by respondents, lays down the rule as above stated. In this case plaintiff was an adjoining owner to the road where the obstructions took place and, as the case herein quoted from, suffered a special injury.
In Oetting v. Pollock, 189 Mo.App. 263, 175 S.W. 222, this court found that the plaintiff suffered a special damage because the closing of a road closed his only outlet to a public road and made his damage different from that of the rest of the public. These cases are not authority for respondents' contention.
Respondents, however, contend that appellants have abandoned this allegation of error because, in their brief, they made no discussion or cited no authority to support their contention. They cite O'Connell v. Smith, Mo.App., 131 S.W.2d 730, 733, which states the law:
"Assignments, made without discussion, or citation of authority, or suggestion of the ground, reason, principle, or theory, relied on in support thereof, are treated as abandoned." Persons v. Prudential Ins. Co. of America, Mo.Sup., 233 S.W.2d 729, 731; Missouri Supreme Court Rule 1.08.
There is no contention that this is not the law. However, in the case at bar, appellants did cite authority but they made no argument in the brief.
Under Assignment No. II, however, respondents have a more serious question in that appellants did not raise this matter by preliminary motion or in their answer. We think this contention has merit. Appellants' answer was a general denial.
In Hendon v. Kurn, 351 Mo. 980, 174 S. W.2d 806, 810, the court states this law:
"* * * An issue that plaintiff has not the legal capacity to sue or that there is a defect of parties plaintiff or defendant is waived if not specifically raised by demurrer or answer. * * *" `It has repeatedly been held in this state that a general denial admits the capacity in which the plaintiff sues or in which defendant is sued.' * * *"
Section 509.400 RSMo 1949, V.A.M.S., provides that all defenses or objections not raised are waived except a failure to state a claim upon which relief can be granted. Under this authority we think appellants have waived respondents' right to bring this action.
The serious question in this cause is the sufficiency of the evidence to support the verdict.
*398 In the court's Finding of Fact and Opinion, he states:
"The evidence in the above cause shows the following to be the facts in the case:
"Plaintiffs owned and lived upon a farm in the Southeast corner of Webster County, Missouri, and defendants owned a farm located Northwesterly from plaintiffs' farm, but separated by other land. A road crossed plaintiffs' land, beginning on the South line of their land, where it connected with a county road in Douglas County, and running thence in a generally Northwest direction across the land of others, and finally across the land of defendants where it connected with county roads of Webster County. This road, near the South line of defendants' land, separates, one branch of it going North, close to defendants' house, and connecting with an East and West county road bounding defendants' land on the North; and the other branch of said road, being the part here in controversy, running West and connecting with a county road running North and South and which formed the West boundary of defendants' land. The branch of said road running North by defendants' house had been used as a road, by all having occasion to use it, for as long as any of the witnesses could remember it, and in the year 1925, one George Herman, the then owner of the land now owned by defendants, orally dedicated to public use a thirty (30) feet roadway, which is the branch of said road running West.
"In the year 1925, the road so dedicated was graded with equipment of, and by employees of, the Seymour Special Road District, and work on said road has been performed by said Road District at least once since that time, and the North and South branch was used more in the last year, or so, because of the state of repair and difficulty of traveling the east and west branch during wet weather.
"It further appears from the evidence that defendant John Mathewson, and aided by his wife, by words and acts prevented plaintiffs, and others, from using the East and West branch of said road, and the North and South branch as well, and had threatened, prior to the issuance of the injunction herein, to continue to prevent such use.
"It further appears from the evidence that the land of plaintiffs is in the Seymour School District; that they received their mail on a route of Seymour; and that Seymour was their closest and most convenient trading point. That to reach the City of Seymour by going South from their land, would require several additional miles of travel for plaintiffs.
"The court therefore finds that the East and West branch of said road, here in controversy, is a public road; that defendants prevented plaintiffs from using said road, and threatened to continue to prevent them in such use; that the loss of said route to Seymour would greatly diminish the value of plaintiffs' land; and the plaintiffs, therefore, were entitled to equitable relief."
Section 228.190 RSMo 1949, Section 228.190, V.A.M.S., relating to the establishment of public roads reads:
"* * * and all roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads; * * *."
There is no contention here that any prescriptive right establishing a public road was had before 1887. Thus the evidence must meet the requirements of the statute above set out in order to establish the public road in the case at bar by prescription, that is, by continuous use of said road for a period of ten years or more by the public and the expenditure of public funds for such period. Marshall v. Callahan, Mo.App., 229 S.W.2d 730.
In State v. Kitchen, 205 Mo.App. 31, 216 S.W. 981, 984, the court stated the law:
"* * * We are clearly of the opinion that all that is required by this *399 statute with reference to the expenditure of public money or labor is that for the ten consecutive years of use sufficient public money or labor should be expended on the road to keep it in substantial repair and condition for the public use and public travel."
In State ex rel. McIntosh v. Haworth, Mo.App., 124 S.W.2d 653, 654, the court states the law:
"* * * It is admitted by appellants and respondent that under the statutes of Missouri, no highway could be established as a public highway by prescription since 1887 unless public money or labor had been expended on it and in order to establish a highway as a public highway by prescription where there has been no expenditure of public money or labor thereon there must be proof of adverse user for the statutory period of ten years prior to 1887. * * *"
We think the evidence in the record is about as set out in the findings of fact by the trial court; that there is insufficient testimony of the spending of public money to establish a public road by prescription.
This verdict cannot be sustained unless there was a dedication of the road or estoppel in pais of the landowner. The trial court says, in his opinion and finding of fact, that the branch of the road running north by appellants' house had been used as a road by the public for as long as the witnesses could remember and that in 1925 George Herman, the then owner of the land now owned by appellants, orally dedicated to public use a thirty foot roadway, which is the branch of said road running west. Then the court finds that the east and west branch of said road is a public road.
The only question now is, whether or not the road was dedicated by the owner of the land to public use so as to justify the opinion of the court in finding it a public road.
In State ex rel. McIntosh v. Haworth, supra, 124 S.W.2d page 656, the following law is stated:
"Respondent contends that notwithstanding the provisions of the laws of 1887, page 257, section 57, the highway in question became a public highway by implied dedication or estoppel in pais. While it has been held that regardless of the Laws of 1887, page 257, section 57, that the public may thus acquire the right to use a road as a public highway even though it not be opened by order of the county court and though no public money or labor has been expended thereon. (Mayo v. Schumer, Mo.App., 256 S.W. 549; Borchers v. Brewer, 271 Mo. 137, 196 S.W. 10; Walker v. Southwest Missouri R. Co., Mo.App., 198 S.W. 441; School Dist. No. 84 v. Tooloose, Mo. Sup., 195 S.W. 1023), yet mere user in and of itself alone is not sufficient to establish a public highway by dedication or estoppel. Our Supreme Court in Borchers v. Brewer, 271 Mo. 137, loc. cit. 142, 143, 196 S.W. 10, 12, quoting from Elliott, Roads and Streets, gives the following rule to be applied in such cases: `An implied dedication is one arising by operation of law from the acts of the owner. It may exist without any express grant, and need not be evidenced by any writing, nor, indeed, by any form of words, oral or written. It is not founded on a grant, nor does it necessarily presuppose one, but it is founded on the doctrine of equitable estoppel. * * * It is essential that the donor should intend to set the land apart for the benefit of the public; for it is held, without contrariety of opinion, that there can be no dedication unless there is present the intent to appropriate the land to the public use. If the intent to dedicate is absent, then there is no valid dedication. The intent which the law means, however, is not a secret one, but is that which is expressed in the visible conduct and open acts of the owner. The public, as well as individuals, have a right to rely on the conduct of the owner as indicative of his intent. If the acts are such as would fairly and *400 reasonably lead an ordinarily prudent man to infer an intent to dedicate, and they are so received and acted upon by the public, the owner cannot, after acceptance by the public, recall the appropriation.'
"The sole test in determining whether or not there has been a dedication, is the intent on the part of the owner of the land to dedicate the same to public use as a highway. This intent can be either express or implied but if the intent to dedicate is absent there can be no valid dedication."
Everett Odom testified that he lived on the land described in the petition as belonging to respondents from 1896 to 1928; that he was acquainted with the lands owned by appellants during that time; that he traveled the road in question in going to school, etc., from 1902 down to 1928 and that this road was generally used by the neighborhood. He stated it was an old cattle drive road and haul road which was open to the public. He stated that when he first knew appellants' land it was owned by Brown; that later G. W. Herman purchased it, in about 1919, and that Herman owned the land until one, Gaskill bought it. He stated he lived with his father and that he and his father worked the road in question and used public road machinery. He stated they graded the road about 1925 while Mr. Herman was the owner thereof. He stated Mr. Herman was present, together with his father, at the time such work was done; that Mr. Herman, the owner of appellants' land now, pointed out to them where to make the road. This witness stated that, prior to the time Mr. Herman gave them permission to make the road now claimed, they had to go around in four or five pastures and open gates to get out. He testified they got hold of Mr. Herman to put a road right on that old trail, the old haul road, and that Herman said, "You can straighten it, cut the timber off of it, and make it to the best advantage, and make a road that I can use myself." He said, "I don't want you to make a mess out of it or anything, I want you to make a respectable road." And the witness testified that was what they did. He stated they worked as much as they could by hand, with a mule team and grader, and they employed others to grade up a part of the road. He stated the road was clear of stumps and they could use machinery. He testified that a man who lived in Douglas County, by the name of Brixey, helped construct this road. He testified that Mr. Herman was a lawyer, who was reared in the community; that he directed them where to put the road. He stated this road was used by the public until his father sold the place, that is, the land where respondents live. He testified that Mr. Gaskill, after he purchased the place, fenced off a little of the road for a sheep pasture for about four years. He stated that after respondents purchased the land, the road was opened again right where it had been graded and made.
Wiley Odom testified that he owned respondents' land and lived there 52 years; that he had been away from there four and one-half years now. He stated he know the old road had been there 56 years. He stated that the old road they put there was made in about 1932; that George Herman owned appellants' land at that time. He testified they graded the road that went west, across appellants' land. He testified that Herman had said to fix the road and that he intended to give a deed to it; that he said to make a good, wide road. He testified the road as made was about thirty feet wide. He corroborated his son's testimony as to the building of the road under the direction of Mr. Herman.
Dick Gaskill testified that he is about 70 years old; that he purchased the land now owned by appellants from Mr. Herman in about 1946 or 1947, lived there about two years and sold it to appellants in about 1949. He testified there was a traveled road over appellants' land at the place where respondents now claim is a public road. He stated, however, after he went there that most of the travel was north of his house. He stated he put a wire across the old road long enough to keep his sheep in there and the wire was there when he sold the farm to appellants. He stated he kept the fence there six or eight months.
*401 From the evidence the court was justified in finding that the owner of appellants' land intended a valid dedication of this road for public use and that the same was erected by the people in the neighborhood under the direction of the owner of the land at the time and public labor was expended thereon.
The judgment of the trial court should be affirmed. It is so ordered.
VANDEVENTER, P. J., and BLAIR, J., concur.