Pearle P. Garbee, Admr., Respondent, v. St. Louis-San Francisco Railway Company, Appellant.*

In the Springfield Court of Appeals. Opinion filed January 7, 1927.

1.—Appeal and Error—Challenging Sufficiency of Petition as to Cause of Action. Sufficiency of petition to state cause of action may be raised at any time, though not challenged by demurrer.

2.—Death—Pleading—Must be Survivor, Alleged in Petition. Petition for death of child caused by collision at railroad crossing, alleging that father and mother of child were killed in same collision and at same time, failing to allege that any one survived child competent to take under section 303, Revised Statutes 1919, states no cause of action.

3.—Pleading—Death—Insufficiency of Petition Cured by Evidence. Petition to recover damages for death of child failing to show whether any one survived competent to take under section 303, Revised Statutes 1919, is cured by evidence submitted without objection showing that there were competent survivors, since petition will be considered as amended to conform to the evidence.

4.—Death—Common Disaster—Proving Survivorship. Where two or more persons perish in common disaster, there is no presumption that one survived the other or that they all perished at the same time, but the burden of proving such facts is on the one asserting it.

5.—Same—Same—Presumption. Where two or more perish in common disaster and there is no evidence of survival by one or that all perished at the same time, presumption that they all perished at the same time may be invoked.

6.—Same—Evidence Held to Show Death of Three Occurred at Same Time. As respects right of administrator to recover damages for death of child killed with parents in collision of train with automobile, evidence held sufficient to show that child and parents perished at same time.

7.—Railroads—Humanitarian Rule—Crossing Case—Rule Held Not to Apply under Evidence. Evidence that automobile struck by train at crossing was first seen when train was 300 feet west of crossing and automobile, practically still, was twelve or fourteen feet north of tracks, and automobile suddenly "shot up" when train was 100 feet west of crossing, held not to require submission of action for death of child to jury under humanitarian rule.

8.—Same—Whether Crossing was Public One Held for Jury. In action to recover damages for death of child caused by collision of train and au-

tomobile at crossing, evidence held sufficient to submit question whether crossing used by public and acquiesced in by railroad was public crossing.

9.—Highways—Public Roads—Establishment by Use and Keeping in Repair. Under section 7847, Revised Statutes 1889, and sections 10626, 10635, Revised Statutes 1919, a road may be a public road without having been so established by petition and court order and without expenditure of public money or labor on road every year for ten-year period; it being sufficient if road is kept in substantial repair.

---

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, p. 786, n. 76; 4CJ, p. 750, n. 96; Death, 17CJ, p. 1179, n. 83, 85, 86, 87; p. 1181, n. 98; p. 1285, n. 33; Highways, 29CJ, p. 379, n. 61; Pleading, 31Cyc, p. 723, n. 92; Railroads, 33Cyc, p. 1099, n. 2; p. 1129, n. 68.

Appeal from the Circuit Court of Laclede County.—Hon. W. E. Barton, Judge.

REVERSED AND REMANDED.

E. T. Miller, Frank H. Farris and Mann & Mann for appellant.

(1) The testimony failed to show that the road which intersects defendant's right of way at the point of the accident was a traveled public road within the meaning of the statute (section 9943) requiring the defendant to give the statutory signals of the approach of its train to said crossing. R. S. 1919, secs. 10625-10626. Plaintiff's Exhibit A, which was the alleged order of the county court of Christian county establishing said road, was made without any jurisdiction of the court to make it, and the said judgment and order is void in that it fails to recite the giving of the notice which alone could confer jurisdiction upon the court to make such order, and without which the order is void. R. S. 1919, sec. 10626; Maxey v. Railway, 113 Mo. 1; Hodges v. Railway, 71 Mo. 50; Bauer v. Railway, 69 Mo. 219; State ex rel. v. Railway, 19 Mo. App. 104; Parish v. Railroad, 63 Mo. 284. (2) The plaintiff sues as the administrator of Lewis W. Hendricks, deceased. There is no allegation in the petition that the deceased was a minor. The petition alleged that the deceased had a father and mother. It does not allege that he was a minor of tender years, and no other fact or circumstance is alleged in the petition that will preclude the inference that he might have left a widow or children, and in this particular the petition is fatally defective. Case v. Cordell, 103 Mo. App. 477-479. And the questions may be raised for the first time in this court. Elliott v. Water, L. & P. Co., 245 S. W. 568; Barker v. Railway, 91 Mo. 86. The petition is fatally defective for the further reason because it fails to allege that the deceased was survived by anyone competent to take under him under the laws of descent, and no judgment for damages in favor of his administrator in an action brought under section 4217, formerly sec-

tion 5425, Revised Statutes 1919, can stand. Kirk v. Wabash, 265
Mo. 341; Troll v. Gas Co., 182 Mo. App. 600; Smelser v. Railway, 262
Mo. 25; Colvin v. Railroad, 200 S. W. 715; Titus v. Delano, 210 S.
W. 44; Betz v. Railway, 284 S. W. 455-457. In any event, without
regard to the adequacy or inadequacy of the allegations of the peti-
tion, and without regard to the evidence whether or not plaintiff's
decedent left any next of kin surviving him was an issuable fact,
and plaintiff's instruction P. G. 1 authorized a verdict by the jury
without any finding on the point that plaintiff's decedent left sur-
viving him anyone who would take from him under the laws of de-
scent, and plaintiff's instruction No. 1 is erroneous for that reason.
All that said instruction No. 1 required of the jury was to find that
the plaintiff's decedent left neither father nor mother, brother or
sister, natural born or adopted, surviving him. Titus v. Delano, 210
S. W. 44. (3) There is no presumption of law that the father and
mother of plaintiff's decedent did not survive him. Plaintiff, in his
petition, alleges that all three were killed at the same time. The
burden of establishing that fact was upon the plaintiff, and he in-
troduced no evidence upon that question. 17 C. J., page 1179, sec.
32; Casualty Co. v. Kacer, 169 Mo. 301, 311, and cases cited. (4)
Defendant's peremptory instruction should have been given, be-
cause, if, as we admit for the sake of argument that the crossing in
question was a traveled public road, there was no substantial evi-
dence of the failure of defendant's trainmen to give the statutory
signals with the whistle and bell on the engine. Only one of plain-
tiff's witnesses testifies to any failure to give the signals. That is
William Blubaum, who testifies to hearing no signal. This negative
testimony that he did not hear the signal should, as a matter of law,
be considered as against the great mass of evidence introduced by
appellant that the proper signals were given. Armstrong v. Railroad,
195 Mo. App. 86-87; McNeil v. Railway, 182 S. W. 762; Williamson
v. Railway, 139 Mo. App. 481-489-490; Quimby v. Traction Co., 180
Mo. App. 296; Sanders v. Railroad, 147 Mo. 424; Bennett v. Rail-
road, 122 Mo. App. 709; Shaw v. Railroad, 104 Mo. 657; Rashall v.
Railroad, 249 Mo. 509, 522. This witness Blubaum, who testified that
he heard no whistle or bell, testifies first that he was "seventy-five
rods from the crossing when the train passed me." Then he says,
"seventy-five yards west of the crossing the train passed me. I didn't
hear the whistle blow nor the bell ringing. There wasn't no whistle."
On cross-examination, he says that on his way from church he stopped
at Mr. Amsler's house; that Amsler lived about a mile from this
crossing; that he left this house and come a little better than a
quarter when he heard the train pass; that he had gone about a
quarter of a mile and thought he heard an automobile behind him,
and it turned out to be a passenger train. "Amsler's house is about

a mile from the crossing. I had gone about a quarter of a mile when the train passed me." Several other witnesses testify to Amsler's house being a mile from the crossing. The physical facts place this witness three-quarters of a mile from the crossing when the train passed him and half a mile from where it was the duty of the train to whistle, on plaintiff's theory. Under these circumstances his evidence furnishes no substantial proof and should be ignored by the court. Roseman v. Railway, 251 S. W. 104, 105; Hook v. Mo. Pac., 162 Mo. 580; Nugent v. Mill Co., 131 Mo. 253; Payne v. C. & A., 136 Mo. 583; Petty v. Railroad, 179 Mo. 677; Champayne v. Hamey, 189 Mo. 726; Sexton v. Railway, 245 Mo. 272; Dumphy v. Stock Yards, 118 Mo. App. 522; Davidson v. Frisco, 164 Mo. App. 713. The giving of plaintiff's instruction number P. G. 2, submitting the case to the jury under the last-chance doctrine, was erroneous. There is no evidence upon which to submit this case to the jury upon that theory. Stark v. Lusk, 194 Mo. App. 250; Whitesides v. Railroad, 186 Mo. App. 608; King v. Wabash, 211 Mo. 1; Kreis v. Railroad, 148 Mo. 328; Van Bach v. Railroad, 171 Mo. 338; Tanner v. Railroad, 161 Mo. 497; Boyd v. Railroad, 105 Mo. 380; Lennon v. Railroad, 198 Mo. 514. Plaintiff cannot recover under the last-chance doctrine in any case where the evidence shows that it was merely possible for the servants of defendant to have averted the injury. Browning v. Railroad, 106 Mo. App. 729. The specific act of negligence in the petition charged against defendant's servants on its engine in failing to avert the collision is that they saw the deceased, or by the exercise of reasonable care and diligence on their part could have seen the deceased, in a place of great peril and danger from the approach of said train, in time to have stopped said train or so greatly reduced the speed thereof, without danger either to themselves or to the passengers on said train, as to have given deceased time to have passed out of the zone of danger and peril; and the collision with the car in which the deceased was traveling and the injury could therefore have been avoided. There is no allegation in the petition, or claim asserted, that the engineer could have avoided the injury by sounding the whistle and giving deceased opportunity to get out of or keep out of danger. The Supreme Court of Missouri has always adhered to the doctrine, in the application of the last-chance doctrine to crossing cases, that not only must there be evidence showing sufficient time elapsed within which the accident could have been avoided, by the means charged in the petition taken to avert the collision, but the Supreme Court has always gone further and held that no jury question is presented unless there is evidence from which a jury could find with reasonable certainty that the train could have been stopped, or could have been slowed down, the time and all the circumstances considered, so as to have averted the accident, and it

has further always held that no case is made for the jury if these facts are left in the realm of speculation. Beal v. Railroad, 256 S. W. 733, 735; Beacker v. Railroad, 240 Mo. 507, 518, 519; Hamilton v. Railroad, 250 Mo. 714, 722; Degonia v. Railroad, 224 Mo. 564, 595; M̧arkowitz v. Railroad, 186 Mo. 350, 359; McGee v. Railroad, 214 Mo. 530; Sullivan v. Railroad, 271 S. W. 983. "Why speculate as to one or two seconds in time? . . . Engineers are human beings and we cannot exact of them to act instantly and in the most intelligent way in cases of emergency." Underwood v. Railway, 182 Mo. App. 252, 273; McGee v. Railroad, 214 Mo. 530, 543; Degonia v. Railroad, 224 Mo. 596; Burge v. Railway, 244 Mo. 101. Plaintiff was not entitled to have the issue of last chance submitted to the jury, because the allegations in his petition in that respect are: "They (referring to the servants of defendant) saw the deceased, or by the exercise of reasonable care and diligence upon their part could have seen the deceased, in a place of great peril and danger from the approach of said train, in time . . . ," etc. There is no allegation that the deceased or the driver of the automobile was oblivious of the approach of the train or oblivious of their peril. Obliviousness to peril must be pleaded and proved in order to invoke the last clear chance doctrine. Knapp v. Dunham, 195 S. W. 1062; Kamoss v. Railway, 202 S. W. 434; Haynes v. Railway, 203 S. W. 631.

*L. Claud Mayfield, Hamlin, Hamlin & Hamlin* and *C. W. Hamlin* for respondent.

(1) Defendant tried this case below on the theory that the present plaintiff had no right to bring and maintain this suit for the reason that plaintiff's intestate was an infant in arms and that while its father and mother died in the same disaster, yet on account of the tenderness of the age of the plaintiff's intestate, the law presumes that the child died first. That being true, that if the parent survived the child by a moment's time, the cause of action vested in that parent and that the administrator of the child's estate had no right of action and could not bring or maintain this suit on that account. It is true plaintiff moved to strike out that part of defendant's answer, which motion was sustained by the court, but the case went to trial on the theory above mentioned so far as the defendant was concerned and all reference to defendant's requested instructions or motion for new trial based on plaintiff's inability to bring and prosecute this suit were on the theory outlined above and the case being tried on that theory below, so far as the defendant is concerned, it must be tried in this court on the same theory. Nat'l Board, etc., v. Frey, 239 S. W. 519, 293 Mo. 399; Osagera v. Schaff, 240 S. W. 124, 293 Mo. 333; LaCrosse Lbr. Co. v. Powell, 247 S. W. 1022; Harris v.

220 Mo. App.—79.

Weber Motor Car Co., 251 S. W. 121, 212 Mo. App. 107. Where the evidence supplies an allegation lacking in the petition and no objection is made to it, the defendant cannot afterwards be heard to complain. State ex rel. Powell v. Gromer, 252 S. W. 707; Williams v. Ellis, 239 S. W. 159, par. 7; Baden v. Bertenshaw, 74 Pac. 639; Long-Bell Lbr. Co. v. Webb, 52 Pac. 64; Johnson v. Roach, 82 N. Y. Sup. 203; Ginsberg v. VonSeggern, 69 N. Y. Sup. 758, and which case was affirmed by the Supreme Court of that State and reported in 65 N. E. 1116. The case of Kirk, Administrator, v. Railroad, 265 Mo. 341, being one of the cases cited in the Titus case, uses this very significant language in reference to a failure to allege or prove that there were next of kin left capable of inheriting, etc. It says that plaintiff failed to allege in his petition or to prove that there were next of kin capable of taking, etc.; could not recover. (2) Appellant also tries to make the point that respondent utterly failed to show that the road and crossing where the accident happened was a public traveled road and crossing. This objection is made in the face of the record as follows: Plaintiff showed that this road was established by the county court of Christian county in the year 1894. This road was recognized as a public road and worked by the county. This shows that this was not only recognized as a public road and public crossing, but had been used by the public as such every day for more than twenty years prior to this accident. Hanke v. City of St. Louis, 272 S. W. 936; Man v. Nash et al., 245 S. W. 581, 212 Mo. App. 689. Public Roads. All roads in this State that have been opened by any order of a county court and a plat made thereof and filed with the clerk of the county court of the county in which such roads are situated, and have been used as a public highway by the traveling public for a period of ten years or more, shall be deemed legally opened and established county roads notwithstanding there may have been irregularities in the proceedings had to establish and open such roads, etc. Sikes v. Railroad, 127 Mo. App. 326, 334; Dow v. Kansas City Southern Railway, 116 Mo. App. 555; Main v. Nash et al., 212 Mo. App. 689, 245 S. W. 581. Public Crossing. It is true that the defendant maintains gates at this crossing and have so maintained them for a number of years, and on the gates they have printed or painted this statement: "These gates are for your convenience and the protection of your stock. They must be kept closed, otherwise we will not be liable." The railroad track is quite a bit higher at this crossing than the natural ground both north and south of it, and the defendant built a fill or a dump leading up to the level of the track and down again and has put in the usual crossing boards at the rails and filled in between the ties, and it has been used and recognized as a crossing for over thirty years. Melton v. C. & O. Railway, 78 S. E. 369; Zini v. Railway Co., 250 S. W. 47; Logan v. Railway Co., 300

Mo. 611. (3) Appellant attempts to make the point that there was no substantial evidence offered by respondent to show that the statutory crossing signals were not given. There was the testimony of at least two witnesses, who were as favorably situated to hear the signals as were the witnesses for appellant who swore they did hear the signals, who testified that they did not hear the bell ringing or the whistle sounding as the train approached this crossing. Negative testimony as to whether signals were given or not is good and is entitled to go to the jury for their consideration. Stotler v. Railroad, 200 Mo. 136 et seq. Witness William Blubaum testified positively that he was seventy-five rods by measurement west of this crossing when the train that killed plaintiff's intestate passed by him. That he was driving in a buggy right along side the right of way and testified positively that the bell was not ringing and that the whistle was not sounded at least eighty rods before reaching the crossing and that the whistle was not sounded and the bell did not ring as it approached the crossing. This witness was not impeached and no attempt was made to do it. A verdict may be predicated on the testimony of one witness though disputed by a number of other witnesses. In other words, the jury is the judge of the credibility of the testimony. Gilbert v. Railroad, 226 S. W. 263; McGinnis v. Railway, 268 Mo. 667, 187 S. W. 1165; Busching v. St. Louis Gas Co., 73 Mo. 219. (4) The appellant tries to raise the point that there is a presumption that the father and mother outlived the child notwithstanding they were all killed in the same disaster and that because plaintiff alleges that they were all killed at the same time that the burden is on him to prove that fact. Where the evidence shows, as it does in this case, that the father and mother and child all died in the same disaster. Aley v. Railroad, 211 Mo. 480. (5) Humanitarian rule. The court, *nisi*, did right in submitting the question of what is known as the humanitarian or last-chance doctrine to the jury. Dincler v. Railroad, 265 S. W. 113; Stotler v. Railroad, 200 Mo. 135 et seq.; Bank v. Morris & Co., 257 S. W. 484. One may submit to the jury as a matter of negligence on the part of the defendant both the humanitarian rule and the excessive speed of the train. Rawie v. C. B. & Q. Railway, 274 S. W. 1031, 1034. We also call special attention to what we think is a leading case dealing with the humanitarian rule, to-wit: Hunt v. C. B. & Q. Railway, 259 S. W. 481, 488.

BRADLEY, J.—This cause is based on the fourth subdivision of section 4217, Revised Statutes 1919. The petition was filed in Christian county but the venue was changed to Laclede county, where trial was had to a jury resulting in a verdict and judgment for plaintiff in the sum of $2000. Motion for a new trial was filed and overruled and this appeal followed.

Plaintiff brought this action as the administrator of the estate of Louis W. Hendrix, an infant about one year old at the time of its death which was caused by a crossing collision on May 11, 1924. It is alleged that decedent was struck and killed on a public crossing by one of defendant's passenger trains. The negligence charged is the failure to give the statutory signals, exceedingly high and dangerous rate of speed, and a breach of the humanitarian rule. The answer put in issue the grounds of negligence alleged, and denied that the crossing was a public crossing, and challenged plaintiff's right to prosecute the cause. The cause went to the jury on the alleged failure to give the statutory signals and on the humanitarian doctrine.

Error is assigned on the refusal of a demurrer at the close of the case and on the instructions given for plaintiff.

The demurrer raised three questions, viz.: (1) That the petition does not allege that anyone survived who is competent to take under the statute of descent; (2) that there was no evidence to show that the administrator has the right to maintain this suit; and (3) that there was no substantial evidence adduced to show that defendant was guilty of any negligence alleged.

It is contended that the petition fails to show whether or not anyone, entitled to take under the statute of descent (section 303, Revised Statutes 1919), survived the deceased, and that, therefore, the petition utterly failed to state a cause of action. The sufficiency of the petition was not challenged by demurrer, but if no cause of action is stated, then the point may be raised at any time. [Elliott v. Water, Light & Transit Co., 245 S. W. (Mo. App.) 568.] The petition alleges that the father and mother of the deceased and the deceased were all killed in the same collision and at the same time. Following this allegation it is alleged that there was neither father, mother, minor child or minor children, natural born or adopted, etc. But there is no allegation that anyone survived competent to take under the statute of descent. Absent such an allegation the petition states no cause of action. [Titus v. Delano et al., 210 S. W. (Mo. App.) 44.] Plaintiff contends, however, that the defect was cured by the admission of evidence, without objection, showing that there were survivors competent to take under the statute of descent. There was such evidence admitted without objection, and such being the case the petition will be considered as amended to conform to the evidence. [Treece State Bank v. Wade et al., 283 S. W. (Mo. App.) 714, and cases there cited; Missouri State Highway Commission ex rel. v. Coopers Construction Co., 286 S. W. (Mo. App.) 736.]

The second question raised by the demurrer is upon this theory. It is alleged that the deceased and the father and mother were all killed at the same time. If either the father or the mother or both survived the deceased then the cause of action for the death of the

deceased vested in the survivor or survivors and could not, therefore, be maintained by the administrator of deceased. The evidence shows that the father and mother and the deceased were all killed by the same collision, but it does not show that they all perished at the same instant, nor that the deceased survived the father and the mother. Defendant contends that it devolved upon plaintiff to prove that the father and mother and deceased perished at the same time or that deceased survived the father and mother; and that under the facts here the presumption that they all three perished at the same time should not be indulged. Where two or more persons perish in a common disaster there is no presumption that one survived the others or that they all perished at the same time. The burden of proving that one survived the others, or that all perished at the same time, is upon the one who asserts such to be the fact. [United States Casualty Company v. Kacer, 169 Mo. 301, 69 S. W. 370.] Since there is no presumption that the deceased survived the father and mother and no presumption that they perished at the same time the issuable fact, defendant contends, should be established by evidence, unless the circumstances be such that no evidence on such issue can be produced. When two or more perish in a common disaster and no evidence can be produced as to whether one survived the other or others or all perished at the same time then defendant concedes that the presumption that they all perished at the same time may be invoked. But where evidence can be produced defendant says that the burden is on the one asserting the fact to establish it by evidence. Conceding, for the question in hand, that such is the law, we think that there are in the record sufficient facts and circumstances to support a finding that deceased and the father and mother perished at the same time. The automobile was traveling south. The railroad ran approximately east and west. The train that struck the automobile approached from the west and struck the automobile, a one seated Ford, when the front wheels were about three feet south of the south rail, and at the same time of the impact the train was running at fifty or fifty-five miles per hour. The automobile according to one witness was knocked fifty feet east and thirty feet south of the crossing. The train backed up and put the dead bodies abroad and carried them to the next station, but no one testified that all were dead or that life yet lingered in one or more when first seen immediately after the impact when the train backed up. Neither is it shown how far from the crossing or where the bodies were when the train backed up. But this terrific impact and the location of the automobile and the fact that the "bodies" were loaded on the train as soon as it backed up we think is substantial evidence on the issue that the deceased and the father and mother perished simultaneously. [Aley v. Railroad, 211 Mo. 460, l. c. 480, 111 S. W. 102.]

The third question raised by the demurrer is that there was no substantial evidence tending to show that defendant was negligent in the manner charged. The cause went to the jury on the alleged failure to give the statutory signals and on the humanitarian doctrine and we shall consider only these. Much of plaintiff's evidence on the issue of the statutory signals is of a negative character, and defendant's evidence is of a positive character and tends to show the signals were given. But when measured by a demurrer there is no escape from the conclusion that plaintiff's evidence tends to show that the statutory signals were not given.

Was there any substantial evidence to support the last-chance theory? As stated the railroad ran approximately east and west and the road upon which the automobile was traveling ran north and south. The train approached the crossing from the west at fifty or fifty-five miles per hour and the automobile approached from the north. There is no evidence as to the rate of speed the automobile approached. There were gates at the crossing, but whether the north side gate was closed or open when the automobile reached it does not appear. From the west a train approaches this crossing through a cut on a right hand curve, and the cut terminates about 150 or 200 feet west of the crossing, and the track approximates a straight track from about 200 feet west of the crossing to the crossing. A person standing on the railroad track at the center of the crossing can see a railroad engine from 700 to 800 feet west, but it is not shown how far north of the center of the crossing an automobile on the roadway could be seen by the fireman or engineer on an engine when 700 or 800 feet west of the crossing. The fireman testified that he saw the automobile when the engine was about 300 feet west of the crossing, but there is no evidence as to the probable range of vision of the fireman or engineer north of the crossing from the point 800 feet west of the crossing up to the point where the fireman saw the automobile. When the fireman first saw the automobile he says that it was twelve or fourteen feet from the track, "and it was standing practically still; the wheels were barely turning over." The fireman also testified that when the engine was in about 100 feet of the crossing the automobile "shot up to start across the railroad." The engineer did not see the automobile until the moment of the impact. The fireman gave no notice of the automobile to the engineer and the speed of the train was not slackened until after the impact. There is no evidence in the record except that of the fireman as to the position and approach of the automobile. Plaintiff supports the submission of the humanitarian rule on the evidence that one standing on the crossing can see an engine approaching from the west when it reaches a point 800 feet west of the crossing. Learned counsel for plaintiff in their brief say that the engineer had nine seconds "from the time that he could have seen the perilous

position of these people on the crossing to slow down this train.''
There is no evidence that the automobile was on the crossing or in
the danger zone when the engine was 800 feet west. There is no
evidence as to where the automobile was at that time. According to
the only evidence on the question when the automobile was first seen
the engine of the train was about 300 feet west of the crossing, and
at that time the automobile was twelve or fourteen feet north of the
track and was practically still. If such was the situation, and there
is no evidence to the contrary, then there was no occasion to specially
act to save the occupants of the automobile, because they were in no
danger. If the automobile suddenly ''shot up'' when the engine of
the train was about 100 feet west of the crossing, and there is no evi-
dence to the contrary, then there was nothing that could have been
done by the fireman or engineer to avert the disaster. There is no
reasonable analysis of this record that will give any support to the
submission of the humanitarian rule. But on the issues as made by
the pleadings and the general demurrer was properly refused.

Plaintiff's Instruction 1 and 2 are challenged. Instruction No. 2
submitted the cause on the humanitarian doctrine. What we have al-
ready ruled disposes of this assignment. Instruction No. 1 is chal-
lenged on the ground that it erroneously submitted the question as
to whether the crossing was a public crossing, and because it per-
mitted a recovery without a finding that deceased left surviving some
person competent to take under the statute of descent. Since the
cause is to be remanded it will not be necessary to rule on the last-
mentioned complaint against the instruction. If a retrial is had such
criticism may be avoided.

Defendant strenuously contends that plaintiff failed to show that
the crossing in question was a public crossing. In 1894 the county
court of Christian county made an order establishing the road in
question as a public road, and it has since that time been constantly
used by the public in general. In addition to the order of the court
establishing the road as a public road plaintiff introduced in evidence
right of way deeds from all the landowners concerned, as we under-
stand the record, except the defendant. The road as established by
the county court extended from the south to the north and terminated
fifty yards north of the crossing where it connected with the Billings
and Springfield public road. The road in question was worked some
years by the road overseer, but not every year perhaps. Defendant
kept up the crossing and at the time of the disaster giving rise to this
cause there were four good crossing planks in the crossing and it
was packed with chat or gravel. The track at this crossing is on a
dump and defendant constructed approaches on each side, but did not
put in wing fences or cattle guards. Gates were first put in about
1905, but did not remain long, and then were maintained only at in-

tervals for several years, but had remained for eight or ten years prior to the collision which resulted in the death of deceased. But notwithstanding the gates the road was used constantly by the public and was maintained by the public, and defendant not only acquiesced in this use by the public generally, but invited such use by constructing and maintaining the crossing and the approaches.

Defendant contends that the order of the county court establishing the road as a public road is void and without effect because it does not recite the giving of notice of petition or application for the establishment of the road as was required by section 7797, Revised Statutes 1889. This section has come down without substantial change and is now section 10626, Revised Statutes 1919. But we do not deem it necessary to rule the point made. A road may be given the status of a public road without having been so established by petition and court order. Section 10635, Revised Statutes 1010, among other things provides that all roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads. Such was in effect the statute law in 1894 when the public began the use of the road here in question. [See Sec. 7847, R. S. 1889.] And it is not absolutely necessary that public money or labor be expended upon the road each and every year for such ten-year period. It is sufficient if the road is kept in substantial repair. [State v. Kitchen, 205 Mo. App. 31, 216 S. W. 981.] Under the facts here we do not think the court committed error in submitting to the jury the question of the public character of the crossing. [Sikes v. Railroad, 127 Mo. App. 326, l. c. 334, 105 S. W. 700; Dow v. Railroad, 116 Mo. App. 555, 92 S. W. 744; State v. Kitchen, supra.]

The judgment should be reversed and the cause remanded and it is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.