# WILLIAM F. JOHNSON et al. v. CHRIS RASMUS, Appellant.

### Division One, November 29, 1911.

1. **ABANDONING PUBLIC ROAD: Rights of Abutting Owners.** It has always been competent in this State for the public to abandon the right to highways and public roads. The only limitation is that they must not be abandoned to the injury of the vested rights of abutting owners or persons similarly situated, and these rights may also be abandoned by those entitled to assert them.

2. ———: **Proof: Matter in Pais.** Proof of the abandonment of a public highway may be shown by evidence of matters *in pais* as well as by proceedings in court or other public records.

3. ———: **Nonuser: Sec. 10446, R. S. 1909.** The terminology of the second clause of Sec. 10446, R. S. 1909, shows that it is applicable to the abandonment of any public road by nonuser for ten years continuously. Hence there is no reason why the clause should be construed as having been intended to apply only to roads which the public acquired through imperfect proceedings in the county court, although, it is true, the first clause of the section regulates acquisition through such imperfect proceedings.

4. ———: **Acts of Parties Entitled to Highway: Statute of Limitations.** The loss of the right to a public road, resulting from abandonment or vacation by the public, accrues from the acts of the parties entitled to the highway, and not from the adverse or hostile possession of others; hence there is no room for the application of the rule that titles cannot be builded against the State upon the Statute of Limitations.

5. ———: **Statute of Limitations: Later Legislative Act.** Section 10446, R. S. 1909, provides in plain terms that "nonuser by the public for a period of ten years continuously of any public road shall be deemed an abandonment of the same." That section was adopted in 1887, while the inhibition upon the running of the Statute of Limitations against the State became effective August 1, 1866. Therefore, even if it could be held that the right of the public to abandon a road was governed by the Statute of Limitations, this would no longer be the case after the adoption of the Act of 1887.

Appeal from Cooper Circuit Court.—*Hon. Samuel Davis,* Special Judge.

REVERSED.

*John Cosgrove* and *Daniel W. Cosgrove* for appellant.

*Williams & Williams* for respondent.

The Statute of Limitations has no application. It does not run against the State and gives no title to the occupier of a public road, no matter how long the occupation may be continued. Section 9432, R. S. 1899, has no reference to a regularly and legally established road, but only to roads where there were irregularities in the proceedings to establish and open them and where the rights of the public are acquired by user. Such roads and the section may be lost by nonuser. Otherwise as to roads the title to which has been acquired by the public through condemnation or other regular proceedings. State ex rel. v. Busse; 152 Mo. App. 466. (2) There is no estoppel in this case. Nothing said or done by Baker caused the defendant to close up the road. He undertook, by legal proceedings, to obtain the right to do so and was not influenced in his action by the conduct of the present or former owners of the land. Acton v. Dolley, 74 Mo. 63; Elliott on Roads and Streets (2 Ed.), sec. 884.

BOND, C.—This is an action in equity to enjoin defendant from the alleged obstruction of a public road, known as the Boonville and Pisgah road, which it is claimed is necessary for ingress and egress to the farm now owned by complainants, in Cooper county, Missouri. Defendant's answer admits the former existence of the road, but sets up, that on the 2d of February, 1891, the county court of Cooper

county ordered it vacated from its beginning point to the place of its junction with the Boonville and Tipton road, and in lieu thereof ordered another road to be constructed so as to connect the beginning point of the old road in a straight line, running east and west, with the Boonville and Tipton road. The answer further states, that from said date until the filing of this suit the old Boonville and Pisgah road had been entirely abandoned by the county and the traveling public, except a short stub running south from the farm now owned by plaintiffs and the common beginning point of the old and new road; that at the time of the vacation of the old road and the construction of the new, defendant was a tenant on the farm now owned by plaintiffs; that the then owner of that farm acquiesced in the action of the county court in changing the road as above stated; that defendant had spent a large sum of money in enclosing, improving and cultivating his lands over which the old road ran, and had erected improvements near its former site; that the county had wholly abandoned the old road and had continuously worked and improved the substituted road; that plaintiffs purchased their farm in 1903 with full knowledge of all of said proceedings and of the abandonment of said highway, and after a lapse of more than ten years, and were guilty of laches by setting up the claim made in their present suit.

On the trial the proceedings of the county court in reference to the change of this road were introduced in evidence, showing that the change had been made by order of that tribunal, and that the old road had been declared to be vacated. There was also oral testimony showing that thereafter the old road had been entirely abandoned by the traveling public as well as the county authorities, and in lieu thereof the substituted road had been recognized and used as a public highway continuously; that it was a much better road-bed for traveling purposes and furnished a

closer connection between the common beginning point of the two roads and the Boonville and Tipton road; that subsequent to the vacation of the old road, this defendant erected feed pens and wells so near the portion of the old road on his lands that they would have to be removed in case it was reopened; that he made the application to the county court to turn the old road into the new road; that he and the consenting property-owner who signed the application owned all of the land over which the old road ran, except about forty acres near its former junction with the Boonville and Tipton road, and except the farm now owned by plaintiffs but then owned by the lessor of defendant; that said lessor was informed by defendant of his action in procuring the new road and acquiesced therein. There was evidence tending to show that the rental value of the farm now owned by plaintiffs might be 75 cents an acre less than it would have been if the old road had not been changed.

There was a decree awarding plaintiffs nominal damages and perpetually enjoining defendant from the maintenance of fences and other improvements with which he had enclosed the road after its vacation and abandonment by the public. From this judgment defendant appealed.

## OPINION.

I. The theory on which the learned trial judge rendered his decree perpetually enjoining defendant was, that the entire proceedings in the county court looking to the change of the old Boonville and Pisgah road into the new road and the partial vacation of the old road were absolutely void, and hence no bar to this suit; and, further, that the defense of the abandonment of said road by the county authorities and by the traveling public from the time of said proceedings up to the filing of this suit could not be interposed.

Without stopping to determine the efficacy of the proceedings in the county court instituted by defendant under the special statute permitting land owners who desired to cultivate a portion of their land over which a road runs to turn the course of that road to another road to be.established over the land of the petitioner and a consenting land owner (R. S. 1909, sec. 10,444; R. S. 1899, sec. 9447; R. S. 1889, sec. 7818; Howe v. Callaway, 119 Mo. App. 256), we will consider the defense of abandonment, for if that is available, it is a complete bar to the present action, and renders it unnecessary to discuss the effect of the order of the county court.

It has always been competent in this State for the public to abandon the right to highways and public roads which it acquired in the common law methods of dedication and prescription arising from adverse use, or by the statutory method regulating, first, the opening of new roads; second, the changing of an existing road and the substitution of a new one therefor; and, third, the turning of a road running over a portion of the farm of the petitioner, who desires to enclose and cultivate the same, into a changed road running over his land and that of a consenting landowner. [R. S. 1909, secs. 10,435, 10,447, 10,458, 10,461.]

The only limitation upon the abandonment of an established public road is that it must not be done to the injury of the vested rights of abutting owners or persons similarly situated. As to this, it is said, "But where no such rights are involved, the public may either abandon or vacate a highway; and where such rights do exist, they may also be abandoned by those entitled to assert them; or the road or street may be vacated by proper legal proceedings and the payment of due compensation. It is proper, therefore, to state that a highway may cease to exist either by abandonment or by vacation according to law." [Elliott on Roads and Streets (3 Ed.), sec. 1172.] Proof of the

abandonment of a public highway may be shown by
evidence of matters *in pais* as well as by proceedings
in court or other public records. In 1887 a statute was
adopted in this State fixing the length of time of non-
user sufficient to prove an abandonment of any public
road. This statute has been carried into each revis-
ion since its passage. [R. S. 1889, sec. 7847; R. S.
1899, secs. 9472 and 9694 (duplicates of each other);
R. S. 1909, sec. 10,446.] In the first two revisions it
was maintained in its original form. In the latter it
has been maintained in an amended form. In all stages
of its existence, the statute has read: "And nonuser
by the public for a period of ten years continuously
of any public road shall be deemed an abandonment
of the same." When the statute embracing the above
language was originally passed it had a threefold pur-
pose; first, to regulate the length of use necessary to
establish a road which had been irregularly created by
a county court; second, to provide a term of disuse
sufficient to show abandonment of any public high-
way; and, third, to provide against the loss of title
by the owner of lands by any adverse possession and
use of such lands as a highway, unless such public
use was accompanied with an expenditure of public
money or labor on the lands. [State v. Muir, 136 Mo.
App. 123.] The terminology of the above quotation
from the statutes shows that it is applicable to *any*
public road, hence there is no reason why it should
be construed as having been intended to apply *only*
to roads which the public acquired through imperfect
proceedings in the county court. The three purposes
of this statute are separately set forth in order that
each of them might have independent meaning and
effect. In the paragraph under consideration the Leg-
islature designed to fix the length of time abandonment
of the use of a highway must be shown before the right
to it as such could be lost to the public. The statute
recognized that any public road might be vacated or

abandoned according to law, and provided in this paragraph the length of time which the proof must show nonuser before said defense could arise. It was not designed to confine this defense to that class of roads only, which the public had acquired in a particular way, but the statute by clear and positive terms is made applicable to *any* highway or public road however acquired. Neither is there any authority for a different view in State ex rel. v. Busse, 153 Mo. App. 466 (cited by respondents). Neither does the fact that the Statute of Limitations has not run against the State since August 1, 1866, militate against this conclusion. [City of Columbia v. Bright, 179 Mo. 441.] In cases of the loss of the right to a public road resulting from abandonment or vacation by the public, the result accrues from the acts and doings of the parties entitled to the highway, and not from the adversary or hostile possession of others; and hence, affords no room for the application of the rule that adverse titles cannot be builded against the State upon the Statute of Limitations. However, the Act of 1887 is a direct, clear, positive legislative provision fixing the period of time within which the public by nonuser will be held to have abandoned a road or highway. If, therefore, it could be held that the right of the public to abandon a road was prevented by the Statute of Limitations, it would necessarily follow that this would not continue *after* the enactment of the latter act, providing in plain terms for the loss of the highway by an abandonment based on nonuser for a time fixed by the statute. For the subsequent statute would modify in accordance with its own terms the provisions of the former. From the testimony showing the complete abandonment of the old road, except the short portion connecting on its side for a distance of about a furlong the farm now owned by plaintiffs with the new road, it is clear and undisputed there is no claim that any abutting property owner has not abandoned any rights he

may have had to reimbursement, or that any action has ever been taken until plaintiffs' suit. The farm now owned by plaintiffs was *then* rented to defendant. The evidence shows that his landlord interposed no objection to the vacation of this road or the substitution of the new one. Under these circumstances, we think the defense of abandonment has been substantiated in accordance with the provisions of the governing statute.

There are many ways whereby plaintiffs may have proper and necessary road facilities, if the outlet now connecting their land with the new road is not reasonably sufficient.

The conclusion reached renders it unnecessary to consider whether in the present collateral attack the proceedings of the county court in changing the road in controversy could be successfully assailed. [Belk v. Hamilton, 130 Mo. 292.] The result is, the judgment in this case should be reversed. *Brown, C.*, concurs.

PER CURIAM.—The foregoing opinion of BOND, C., is adopted as the opinion of the court. All the judges concur.