FRED OETTING, Appellant, v. LAURA POLLOCK
et al., Respondents.

Springfield Court of Appeals, April 14, 1915.

1. HIGHWAYS: Mandatory Injunction Against Obstructions:
Fences. Mandatory injunction will lie against a defendant who
built a fence across a highway where the injury to plaintiff
was special and if such relief is denied him he would have
no connection with any public road and his private road would
be useless.

2. ———: Vacation: Presumptions. Vacations of highways are
not favored by the courts and the presumption is always in
favor of their continuance.

3. ———: ———: How Effected. A public highway may be va-
cated by statutory proceedings or by abandonment from non-
user by the public for a period of ten years continuously.
[Sec. 10446, R. S. 1909.]

4. ———: ———: Burden of Proof. The burden of showing an
abandonment of a public highway is upon the party who as-
serts it.

5. ———: ———: Abandonment Must be Clear and Entire. In
order to vacate a road by nonuser there must be a clear and
entire abandonment of the road by the public for the statutory
period. Partial nonuser will not suffice. If used at all the road
will not be deemed vacated.

6. ———: ———: Abandonment: What Necessary to Constitute.
Abandonment includes both the intention to abandon and the
external act by which the intention is carried out.

Appeal from Wright County Circuit Court.—*Hon.
C. H. Skinker*, Judge.

REVERSED AND REMANDED (*with directions*).

*F. M. Mansfield, E. B. Garner* and *Argus Cox* for
appellant.

(1) The vacation of highways by nonuser is not
favored and the presumption will always be in favor

of the continuance of their existence and the court will closely scrutinize the evidence relied on to show non-user and to establish the vacation of a road by non-user, the proof of its abandonment must be clear and satisfactory. Elliott on Roads and Highways, sec. 1173; 37 Cyc. 194; Kyle v. Board of Commissioners, 94 Ind. 115. (2) In order to show the vacation of a road by abandonment, the evidence must show that the abandonment by the public was complete and entire. There can be no abandonment by a nonuser so long as any portion of the public continue to use the road as a highway. 37 Cyc. 196; O'Dea v. State, 20 N. W. 299; Kelley Nail & Iron Co. v. Lawrence Furnace Co., 22 N. E. 639; Cox v. Highway Coms., 62 N. E. 791, 793; Small v. Binford, 83 N. E. 507, 510. (3) A public highway cannot be vacated, either by abandonment or by direct proceeding in court, for that purpose, to the injury of a person who has a private interest in the highway without first making compensation for the injury. Parties who have a private interest are abutting property owners and those similarly situated, that is, those who use the road as a means of access to their property. Elliott on Roads and Bridges, sec. 1172; Johnson v. Erasmus, 237 Mo. 586; Robinson v. Korns, 250 Mo. 663; Heinrich v. City of St. Louis, 125 Mo. 424; McQuigg v. Cullens, 47 N. E. 595; Johnston v. Lonstorf, 107 N. W. 459; Philips v. Highway Commissioners, 35 Mich. 15; Ross v. Commissioners, 32 Mich. 301; Beutal v. Bay City Sugar Co., 94 N. W. 202; Beuhl v. Union Depot Co., 57 N. W. 829; Hill v. Hoffman, 58 S. W. 929, 932.

No appearance for respondents.

STATEMENT.—The question presented by this controversy is whether a public road in Wright county had by reason of nonuser by the public for a period of ten years continuously been abandoned under the statute (Sec. 10446, R. S. 1909). Plaintiff and defendant Laura

Oetting v. Pollock.

Pollock own farms in Wright county. The other defendants are nominal parties only. Plaintiff claims that defendant obstructed a public road which runs across the land owned by defendant; that in the year 1893 plaintiff secured from the county court an order granting and opening a private road fifteen feet in width connecting with the said public road, and that this private road was and is the only road connecting plaintiff's land with the public road; that in the year 1912 defendant Laura Pollock placed an obstruction in the public road, to-wit, a fence, in such a way that plaintiff and the public could not travel the same; that she still maintains the same and that it has become a nuisance to this plaintiff, depriving him of the use of his private way, and that unless permitted to travel said public road where the obstruction is placed, plaintiff, by reason of the obstruction, has no outlet to any public road; that the private road was established at an expense of more than $100 to this plaintiff; that plaintiff notified the commissioners of the special road district in which the obstruction is maintained of the same and that it is a nuisance to the plaintiff as well as to the public and has requested the commissioners to remove said obstruction, but that they have failed and refused to do so, wherefore he has joined them as defendants herein; that he is greatly damaged and has no adequate remedy at law. The prayer is that ''a mandatory injunction may issue requiring defendants to abate said nuisance and to remove said obstruction and that said defendant be permanently enjoined from further maintaining said obstruction and nuisance on said public highway as heretofore described, and such other relief as plaintiff may in equity and good conscience be entitled.

Defendant for answer, first, denied that the road mentioned in plaintiff's petition is now or ever has been a public road, and, second, that if it ever was a public road it was abandoned more than ten years next

before the filing of this action and that said road has not been used by the public for more than ten years next before the filing of this action.

For reply, plaintiff denied that the road has ever been vacated or abandoned, and that under the facts the road could not have been vacated or abandoned by the public without first making compensation to the parties injured, which had not been done.

After hearing the evidence the court made a finding of facts which is agreed to by the parties as the facts of the case, and found therefrom that plaintiff is not entitled to any relief.

The finding of facts is as follows:

"The court finds the following to be the facts as shown by the testimony in this case:

"That at the time of the establishment of the present public highway that now runs from Hartville, the county seat of Wright county, to Mansfield, a railroad station on the railroad some fourteen or fifteen miles distant, and which road was opened in the year 1884, the road in question was and for twelve or fifteen years prior thereto had been a public road. That it was established by the orders of the county court of Wright county and that the overseers worked it and expended public money upon it so that it became and was a legally established public highway.

"That after the location of the present road leading from Hartville to Mansfield, no steps were ever taken to vacate the road in controversy and no action of the county court looking to that end was ever had. That after the location of the present road from Hartville to Mansfield, the road in controversy was not traveled as much as before and for the last fifteen or twenty years no public money has been expended upon it and it has not been traveled by the public generally to any extent and it has been regarded by most of the people living in the neighborhood of it as an abandoned road.

"That about the year 1896 a schoolhouse was built upon the road in question, at a point about one-half or three-quarters of a mile from the portion of the road which has been obstructed by a fence by defendant and at the time said schoolhouse was built it was located upon this road for the reason that it was then a public road and public money was expended upon this road between the schoolhouse and the point where the fence of defendant was placed across it the next year after the schoolhouse was built but none has been expended upon it since that time.

"That in the year 1907, a petition was filed with the county court asking that a portion of this road be changed where it crossed the forty acres of land immediately north of the forty owned by the defendant, this petition being signed by a number of freeholders residing in the immediate vicinity of this road, and that pursuant thereto, the county court of Wright county made an order changing the road as requested by the petitioners and this road as changed ran along the north line of the forty acres of defendant.

"That in the year 1893, the county court of Wright county, by a proper proceeding, opened a private road connecting the land of plaintiff with the road in question at the south line of the forty owned by defendant. To secure this private way, the plaintiff was required to expend the sum of $105.

"That in the spring of 1912, the defendant built a fence across this road in two places; one at the north line of said forty near the place where the beginning of the change was ordered by the county court in 1907 begins; the other fence was placed across it at the south side of said forty acres, within a few feet of the place where the private road established by the county court connecting the land of plaintiff with said road entered said road. That if the fence placed by defendant across the road in question is permitted to remain plaintiff will have no connection with any public road and the

private road which was established by order of the county court connecting his land with the road in question will be entirely useless to him and he will be substantially damaged thereby. That east of and beyond the schoolhouse mentioned, other parties have built fences across portions of the same road and have maintained them there for four or five years, with gates where these fences cross this road and persons using this road have passed through said gates. That the school children of the district have used the road in controversy in going to and from school ever since the schoolhouse was built and have so used it since the fences were built across it by defendant, and in doing so have climbed over the fences placed there by defendant."

## OPINION.

FARRINGTON, J.—There is no theory upon which the judgment of the trial court denying plaintiff relief can be sustained. It is alleged and proven that he will suffer irreparable damage by the maintenance of this public nuisance. It is alleged and established to our satisfaction that plaintiff has no adequate remedy at law. [State ex rel. Rucker v. Feitz, 174 Mo. App. l. c. 460, 160 S. W. 585.] It is alleged and shown that the injury to plaintiff is special—that he will suffer damage over and above that suffered by the community at large, and that his damage is different in kind and not merely in degree from the injury to the public generally. [Weller v. Lumber Co., 176 Mo. App. 243, 161 S. W. 853; Patton v. Forgey, 171 Mo. App. l. c. 8, 153 S. W. 575; Beutel v. West Bay City Sugar Co. (Mich.), 94 N. W. l. c. 204.] The finding is "that if the fence placed by defendant across the road in question is permitted to remain *plaintiff will have no connection with any public road.*" [Italics are ours.] And it is further found that the private road will be

useless and that plaintiff will be "substantially damaged thereby." The obstruction is not in the private road but is maintained in the old public road that is still used by school children at least—the road that the county court upon petition of freeholders as late as 1907 saw fit to recognize as a public road to the extent of making a change of some kind in a part of it—the road that the trial court finds is not traveled "by the public generally to any extent." There is no mention of laches, or bad faith, or unclean hands, or any of those elements which often cause courts of equity to stand aloof. It is no longer doubted that equity will grant the affirmative relief characterized as "a mandatory injunction." [See, State ex rel. Rucker v. Feitz, supra; Atterbury v. West, 139 Mo. App. 180, 122 S. W. 1106; Patton v. Forgey, supra, l. c. 9.] Unless plaintiff can obtain this extraordinary remedy he will—according to the finding of facts—have no connection with any public road and the private road will be useless to him. We have, therefore, a plain case for equitable intervention.

The deference we owe and like to pay to the learned trial judge in his conclusions must not be permitted to obscure our vision or to prevent the plaintiff from obtaining what we conceive to be his rights. The courts are open and ample provision is made for the vacation of roads that have become useless. In 2 Elliott on Roads and Streets (3 Ed.), sec. 1172, we find the following language: " 'Once a highway always a highway,' is an old maxim of the common law to which we have often referred, and so far as concerns the rights of abutters, or others occupying a similar position, who have lawfully and in good faith invested money or obtained property interests in the just expectation of the continued existence of the highway, the maxim still holds good." Again, in Kyle v. The Board of Commissioners of Kosciusko County, 94 Ind. 115, 116: "It is a very ancient rule of law that vacations of high-

ways are not favored, and that the presumption will always be in favor of their continuance.'' The rule as stated in Elliott on Roads and Streets, quoted above, has received the sanction of our Supreme Court in the case of Johnson v. Rasmus, 237 Mo. l. c. 590, 141 S. W. 590. Hence, since the effect of an abandonment or vacation of this public road will be to deprive plaintiff of his way of ingress to and egress from his farm, the road cannot be vacated except by a proceeding for that purpose. In such a proceeding plaintiff could appear and assert his rights, but until such course is taken the road must be left open and unobstructed. That the judgment of the trial court was based on an abandonment by nonuser and not on any order vacating is evident as the finding of facts recites that ''no steps were ever taken to vacate the road in controversy and no action of the county court looking to that end was ever had,'' which is followed by recitals tending to show a nonuser. In the case of Johnson v. Rasmus, supra, the Supreme Court said: ''The only limitation upon the abandonment of an established public road is that it must not be done to the injury of the vested rights of abutting owners or persons similarly situated.'' The plaintiff in our case is a person ''similarly situated,'' as was the relator in the case of The People on Relation of Phillips v. The Highway Commissioners of China, 35 Mich. 15. [See, also, McQuigg v. Cullins (Ohio), 47 N. E. 595, 596.]

There may be a vacation of a public highway by proceedings under the statute, as we have shown, or the vacation may occur by abandonment under section 10446, Revised Statutes 1909—from nonuser by the public for a period of ten years continuously. That is to say, ''a highway may cease to exist either by abandonment or by vacation according to law.'' [2 Elliott on Roads and Streets (3 Ed.), sec. 1172.] The same authority (Sec. 1173) holds that the burden of showing an abandonment is upon the party who asserts it. The

court in our case, in its finding of facts, stated that this road has been regarded by most of the people living in the neighborhood of it as an abandoned road. We do not believe this is sufficient to constitute abandonment. If no other way existed of vacating highways, it might be argued with good reason that what most of the people thought who were entitled to use a highway would be a controlling factor. In the case of O'Dea v. State (Neb.), 20 N. W. 299, 300, the rule is thus declared: "In order to vacate a road by nonuser, there must be a clear and entire abandonment of the road by the public for the statutory period. . . . Officers and courts cannot inquire into the extent of the use whether used much or little by the public. If used at all, the road will not 'be deemed vacated.' " [See, also, Cox v. Commissioners of Highways of East Fork Twp. (Ill.), 62 N. E. 791, 793; Kelly Nail & Iron Co. v. Lawrence Furnace Co. (Ohio), 22 N. E. 639, 640.] In the case of Small v. Binford (Ind.), 83 N. E. 507, 510, the court said: "The fact that the road is rarely, if ever, used by persons other than the appellants, makes it none the less a public highway. The law does not fix the number of persons who must travel upon a road to determine its existence"—citing authorities. When a right to use a road as a public highway has become vested in the public it inures to the benefit of all the public; hence such a right cannot be surrendered or abandoned unless all of the public concur therein. The court in this case did not find that the public generally had entirely ceased to travel this road, but did find that it had not been traveled by the public generally to any extent for the last fifteen or twenty years; and that can only mean that the extent of the travel by the public was limited. The fact that defendant in the year 1912 took the law in her own hands and fenced up a highway that at least was still used by the plaintiff and the children who attended the school situated on that road, and one that was recognized as an existing public road

in 1907 by the county court, does not constitute an abandonment under the statute. Our Supreme Court in the case of Hickman v. Link, 116 Mo. l. c. 127, 22 S. W. 472, said: " 'Abandonment includes both the intention to abandon and the external act by which the intention is carried into effect.' " We think the defendant in this case utterly failed to carry the burden cast upon her of establishing an abandonment of this public road, and that the trial court clearly erred in its judgment. [37 Cyc. 194.]

Accordingly, the judgment is reversed and the cause remanded with directions to the circuit court of Wright county to set aside its judgment and enter a decree granting plaintiff the relief prayed for and taxing the costs of the suit against the defendant, Laura Pollock.

*Sturgis, J.,* concurs. *Robertson, P. J.,* concurs in the result.