Lue C. LOZIER and Nolia T. Sillin, Plaintiffs-Respondents,

v.

Arthur BULTMAN and Louise Bultman, Defendants-Appellants.

No. 22223.

Kansas City Court of Appeals. Missouri.

Dec. 5, 1955.

Christian F. Stipp and Joe H. Miller, Carrollton, for appellants.

Jack C. Jones, Carrollton, for respondents.

CAVE, Judge.

This is an action brought by the plaintiffs against the defendants to enjoin them from closing or obstructing the use of an alleged public road, and for an order declaring the passageway to be a public road. The chancellor found that the road was a public road and granted the injunctive relief prayed for, with the exception that defendants were permitted to place and maintain two free-swinging gates at certain designated places. Defendants perfected their appeal.

Title to real estate is not directly involved and jurisdiction is in this court.

Judge v. Durham, Mo., 274 S.W.2d 247; Gibson v. Sharp, Mo., 270 S.W.2d 721.

The amended petition alleges that the plaintiffs are the owners of certain specifically described land; that the defendants are the owners of certain land adjacent to and immediately north and east of the land owned by the plaintiffs; that along a certain designated line across a part of defendants' land is a road which provides the only means of ingress and egress to and from plaintiffs' land and other lands to the south and west thereof to a public highway; "that for more than fifty years said road has been *dedicated* to public use and has been used as a public road; that said road being public has been maintained and kept in a usable condition by grading, scraping, filling and side ditching for the use and benefit of the public as well as the adjacent and abutting property owners; * * * that said road has been used by the plaintiffs and their predecessors in title and by the public generally, openly and notoriously, for a period of more than fifty years; * * * that defendants and their predecessors in title, by allowing the plaintiffs and the general public to use said roadway, have intended thereby to *dedicate* said road to the plaintiffs and the general public and allow the use thereof, and have *dedicated* and allowed the use of said road by plaintiffs and their predecessors * * * in excess of ten years; * * * whereupon an *easement* has arisen both to the plaintiffs and in the general public, and by reason of said facts, defendants are *estopped* from denying the plaintiffs and the general public the use thereof * * *"; (Italics ours) that on or about the 12th day of April, 1951, the defendants wrongfully, unlawfully and wilfully obstructed and closed said road by erecting thereon and across the same wooden gates at two different places, and stated to plaintiffs that such acts were intended as a permanent closing of the road. The prayer of the petition sought an injunction against the defendants prohibiting the closing of said road and that the court declare the road to be a public

roadway, and for such other relief as may be just and equitable.

The answer admits the ownership of the respective tracts of land, but denies all other allegations of the petition; and alleges that for more than ten years continuously immediately prior to April, 1951, neither the plaintiffs, nor any other person or persons used any part of defendants' land adversely as a means of going to or from plaintiffs' land, and that during said ten year period no public money or labor was expended on any part of said alleged road.

The road is located substantially along the north and south center section line of Section 8, Township 51, Range 22, Carroll County, Missouri. No contention is made that the judgment does not sufficiently describe the road, and it is unnecessary to specifically describe it here. However, in aid of a clearer understanding of the evidence and the situation, we have prepared the attached plat, from the evidence and exhibits. The plat is not drawn to scale, and was not an exhibit in the case, and is being used solely for descriptive purposes.

Defendants first contend that the petition fails to state facts sufficient to constitute a claim on which relief can be granted. · The basis of this argument is that the petition does not contain all necessary allegations to *legally establish* a public highway. This is not a proceeding to legally establish a· public road. The primary purpose of the suit seeks injunctive relief, and the question of whether·the road is a public road is a collateral issue. ·Judge v. Durham, Mo. App., 281 S.W.2d 16. Furthermore, there was no motion filed attacking the sufficiency of the petition or to 'make it more definite and certain, and certainly it does not wholly fail to state any claim. Under such circumstances, every necessary intendment in favor of the petition will be indulged. Goldman v. Ashbrook, Mo.App., 262 S.W.2d 165. It may not be a model petition, but when all the allegations are considered, we think it is sufficient, and is not now subject to attack.

Defendants' last, and principal, contention is that the evidence is insufficient to support the judgment, because (a) the evidence does not show adverse user for a period of ten consecutive years; and (b) there is no substantial evidence that "public money or labor" was expended on the road "for ten years continuously". The basis of this contention is that the evidence is not sufficient to establish a public road under the provisions of Section 228.190, RSMo 1949, V.A.M.S., which, among other things, provides that " * * * and all roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or· labor for such period, shall be deemed legally estabished roads; * * *."

We think defendants are in error in assuming, or taking the position, that this suit is founded on said section or that the section is the, 'exclusive method of establishing a public road by user. In School District No. 84 v. Tooloose, Mo., 195 S.W. ]023, 1024, the supreme court discussed this question, and said: "All that is necessary to be shown in such cases is an adverse use on the ·part of the public, either for a sufficient time to create a bar under the statute of limitations, or a user by the public under such circumstances and for such a period of time, with the acquiescence of the owner, as to imply on his part a dedication of the land and a prescriptive right thereto on the part of the public by its acceptance and appropriation as a public highway, all of which may be shown by facts and circumstances, as well as positive proof." See also Borders v. Glenn, Mo., 232 S.W. 1062; Faulkner v. Hook, 300 Mo. 135, 254 S.W. 48; Chapman v. Schearf, 360 Mo. 551, 229 S.W.2d 552; Mulik v. Jorganian, Mo.App., 37 S.W.2d 963; Borchers v. Brewer, 271 Mo. 137, 142, 196 S.W. 10. In the last cited case, the court reviewed many cases on this subject and, among other things, said, 271 Mo. 142, 196 S.W. 12: "'A distinguishing difference between a statutory and common-law dedication is said to be that the former operates by way of a grant, and the latter by way of an estoppel *in pais* rather than by grant.'"

We think the instant case was brought, tried and decided·on the theory of a common law or implied dedication. ,

With such principles of law in mind, we examine the evidence.

The controversial road and all the land concerned with its use, are located in the Missouri River bottom. As shown by the exhibits, the river passes a short distance to the south of the "levee", as shown on the attached plat, and due to the course of the river, the land in this immediate vicinity is somewhat in the shape of a peninsula; consequently, access to a public road to the south or southwest is prevented by the river.

The evidence discloses that the defendants acquired their land in 1944, and that for fifty years or more prior thereto, this land was owned by the Allamong family, and is referred to by some of the witnesses as the "Allamong Ranch". The defendants and the Allamong family lived in the "Big House—A". The "Little House" or tenant

house is indicated by "B", and the barns were located at "C". Plaintiffs acquired their land in about 1940, and owned other land to the south and west, and several other families lived on land adjacent thereto. Plaintiffs' house is referred to in the evidence as the "Bill Hill House", and is indicated by "D".

Along the north line and east line of defendants' land are long established *public roads*. The disputed road connects with the public road along the north line of defendants' property and at the north and south center section line of Section 8, and proceeds along said section line southward and across the "levee" to the river, but does not connect with a public road at the south end.

There were approximately twenty witnesses who testified at considerable length relative to the use of the road in controversy. Much of the evidence was repetitious, and it would serve no useful purpose to detail the testimony of each witness on the question of adverse user. Summarized, such evidence shows, and in fact it is not disputed, that for more than forty years prior to 1951, the plaintiffs and their predecessors in title, and other people living south and west of plaintiffs' land, and the public generally, used this road constantly with the knowledge, consent and acquiescence of the Allamongs and the defendants; that it was used in going to market; in transporting farm products; for hauling lumber from near the river; and for such social contacts as are engaged in by any community. It is also in evidence that the travelled portion of the road was always located substantially at the same place and on a straight line; and that it was the most convenient, if not the only feasible, means of ingress and egress to and from plaintiffs' land and other homes located to the south and west.

There can be no question about the general use of the road for forty years or more, with the knowledge and permission of the owners of the land over which it passes. However the mere user might not be sufficient. It must be under such circumstances as to imply dedication by the owner and acceptance by the public. Cases cited supra.

Now, what of the intention of the Allamongs and the defendants to *dedicate* this road for public use? In addition to the knowledge and acquiescence of user by the public as above indicated, the evidence shows that many years prior to 1951, the Allamongs constructed a fence along their north property line to the northwest corner thereof, thence south to plaintiffs' land and thence east to the west line of this disputed road; that at the time they constructed the fence, they left an opening, about fourteen feet in width, at the point where this road connected with the "public road". This clearly indicates that the Allamongs did not intend to prevent the public use of the road. It is a strong circumstance that they recognized the right and the necessity of the public to use it.

Not only that, but there is undisputed evidence that the township board, which was charged with the duty of maintaining the roads in the township, did considerable work on this road with township machinery. Two witnesses testified that between 1915 and 1918, the township "drug it and graded it". Glenn Huddleston testified that in the summers of 1929–30 and 31, he worked for the township board in the maintenance of the roads of that township, and that "we ran the road grader, cleaned out the road ditches and pulled the dirt up in the center of the road, and then we would run what we call a planer, to smooth the roads", and that he did such work on this road. Elmer Wheeler testified that he was a member of the township board in 1929–30 and 1933–34, and that the board's road machinery was used at different times to "maintain" the road. Archie Vasser was township road overseer from 1937 to 1939, and testified that he used the township "maintainer" on this road. Archie Root stated that he was a member of the board from about 1939 to 1941, and that Jim Allamong, who owned defendants' land at that time, requested the board to repair the road and that they sent one of their men to do so. Mr. Sillin stated that there was some township "maintenance" of the road in 1943; that "Mr. Alla-

mong sponsored it"; and that the road was "ditched at that time", Defendants' witness Tom Simms testified that from 1938 until 1951, he worked for the township board in maintaining the roads in the township; and that he "used a drag" on the north end of the road, but does not fix the exact time.

Many witnesses testified that the travelled portion of the road was about twenty feet wide, and ditched on each side, and that neither the Allamongs nor the defendants had ever cultivated across the road, but had used it as a "turn around" when cultivating the fields on either side.

Defendants make much of the fact that at certain times during the period this road was used, the Allamongs and the defendants erected two gates across the road, one at the north end where it intersects the "public road", and the other near the "barns". The evidence on this matter is to the effect that when the Allamongs or the defendants desired to pasture the wheatfields or cornfields on either side of the road, north of the "barns", temporary gates and fences would be erected at the designated points for the purpose of containing the livestock within the fields; that these gates were not erected each year, but when they were in use, the public, without objection or protest by the landowner, used the road in the usual manner by opening and closing the gates. The evidence further shows that the fields were used for pasture principally in the late fall and winter, and that when the livestock was removed, the Allamongs and the defendants either removed the gates or left them open. The most that can be said about this evidence is that it manifested an intention on the part of the Allamongs and the defendants to set aside the roadway to a *restricted* public use. In Faulkner v. Hook, supra, it is said, 300 Mo. 142, 254 S.W. 50: "A prescriptive right to a conditioned use may be acquired as well as to an unhampered one. * * * The erection of gates or bars by consent or without adverse claim does not prove an abandonment of a way or destroy the right thereto. * * * There is ample authority for the proposition that the own-

er of the servient estate has a legal right to maintain gates at each end of a way acquired by prescription, * * *." In Chapman v. Schearf, supra, it is said 229 S.W.2d 555: "If a way acquired by use, 'although well marked and defined, is restricted, during the time required for the establishment of the right, to a use and enjoyment thereof with bars or gates across it, the right acquired will be restricted to the same extent.' * * * It has been said even a dedication may be for a partial use." In the Faulkner and Chapman cases, the court affirmed the judgment which declared that the road was a public road, but permitted the defendants to maintain gates at certain points. This was done on the theory that the defendants had manifested an intention to set aside the roadway to a *restricted* public use.

That is precisely what was done in the instant case. The judgment before us declares the road to be "a public roadway", but authorizes the defendants to "place and maintain two free-swinging gates, not less than fourteen feet in length, across said roadway, one to be located at the north end of said roadway and the other at any point 600 feet to 1100 feet south thereof * * *". Such a provision is authorized by law and by the facts in this case.

We have considered the cases cited by defendants and find them not in point. Those cases specifically involved the question whether the disputed road had been established under the provisions of Sec. 228.190. That is not the theory of this case.

It is our conclusion that the evidence, when considered as a whole, preponderates in showing that the owners of the land over which the disputed road passes had the intention to conditionally or partially set aside or dedicate to the public use and convenience, the described roadway; and that the public, including plaintiffs and their predecessors in title, accepted and used the road to such an extent and for such a time as to acquire the right of user.

The judgment is affirmed.

All concur.