William C. CONNELL and Emma J. Connell, Plaintiffs-Respondents,

v.

J. R. BAKER and Mrs. J. R. Baker, Defendants,

and

Ervin Gore and Rainey Gore, Defendants-Appellants.

No. 8933.

Springfield Court of Appeals, Missouri.

Sept. 16, 1970.

Wangelin & Friedewald, Poplar Bluff, for defendants-appellants Ervin Gore and Rainey Gore.

James R. Hall, Doniphan, for plaintiffs-respondents.

STONE, Judge.

In this action plaintiffs, William C. Connell and Emma J. Connell, as the "equitable owners" (under a contract to purchase) of a 20-acre tract in Carter County, Missouri (hereinafter referred to as "plaintiffs' tract") sought a mandatory injunction requiring removal of obstructions from an alleged "public road" running from that tract in a general northerly direction for a distance of approximately one-quarter mile across a contiguous tract of undisclosed acreage (hereinafter referred to as "defendants' tract") on which defendants Ervin Gore and Rainey Gore resided, and of which they were possessed, under a contract to purchase that tract from defendants J. R. Baker and Mrs. J. R. Baker. Defendants Baker, the record owners of both plaintiffs' tract and defendants' tract, were served with summons but filed no pleading and made no appearance. From a decree granting the requested injunctive relief, defendants Gore appeal.

Whether plaintiffs might enjoin obstruction of the now disputed way depended upon, and thus necessitated an inquiry as to, the existence and status of such way; but, since the relief sought and adjudged was injunctive only, title to real estate was not involved in an appellate jurisdictional sense [Const. of 1945, Art. V, Sec. 3] and the appeal properly was taken to this court. Detert v. Lefman, Mo., 395 S.W.2d 216; Judge v. Durham, Mo., 274 S.W.2d 247; Bates v. Mueller, Mo.App., 413 S.W.2d 853, 854(1).

We observe at the outset that plaintiffs pleaded and tried the case on the theory that the disputed way was a *public* road and that the broad issue for determination, as stated by the trial court, was "whether or not this [way] is now or has been a *public* road." (All emphasis herein is ours.) Plaintiffs' witness John Webb, sixty-eight years of age, who had lived in the neighborhood all of his life and had known the now disputed way since 1912, identified it as "a branch off of the old military road[1] which the Ten Mile [Creek] farmers used"—"that road went right straight on through there and followed the ridge around." Defendants do not challenge the status of the now disputed way as a public road many years ago. In fact, their counsel candidly concede that "there was clearly a public user around the turn of the century." But, under "Points Relied On" in their brief, they urge that the decree for plaintiffs be set aside because (a) "the use of the road was not continuous having been abandoned during the last ten years" and (b) "the use of the road was permissive and not adverse." With these points in mind, we examine the relevant evidence.

On cross-examination, witness Webb agreed with defendants' counsel that all of the "branch off of the old military road" excepting the segment under consideration here (the now disputed way)—*"all but this one part here"*—had been abandoned "for years" prior to trial. But there was abundant evidence that the now disputed way had remained open and had been used by all who desired to travel over it. As witness Webb said, "two old people bought that place [plaintiffs' tract] to start with

---

[1]. Defendants' counsel inform us, dehors the record, that "the old military road ran in Civil War times from Jefferson Barracks down to Little Rock"; and, in this connection we note another road case, Jordan v. Parsons, 239 Mo.App. 766, 771, 199 S.W.2d 881, 883, in which the court enjoined obstruction of a different branch (in Madison County) of "the old military road," there likewise identified as having been traveled and used "in the time of the Civil War."

and that [the now disputed way] was their way out." Subsequently at a time not definitely fixed in the record but prior to 1938 when plaintiffs' witness Effie Greene settled in that neighborhood, a gentleman appropriately referred to throughout the record as "Barber" Smith bought and moved onto plaintiffs' tract, where he continued to reside and ply his trade as a country barber until his death "about" or "right close to" four years prior to the trial on December 2, 1968.

Witness Greene said that "the barber lived back there and there was a lot of cars went back there"—"every day nearly somebody would go back there to get their hair cut" and affirmed that "it [the now disputed way] was open and used by the public during the entire time." Plaintiffs' witness Ernest Lambert, who came into that neighborhood in 1949, was "very familiar" with the now disputed way, had used it "many a time"—"every time I needed a haircut," and likewise affirmed that it was "used by the public during that time." On cross-examination, he described it as "just a road that wound around back through there and they kept gravel on it." Rejecting the suggestion of defendants' counsel that it "kinda played around all over the place," Lambert said "it stayed in one road; they didn't drive around all over the woods." Witness Elmer Lambert, Ernest's son, supplied further information that the now disputed way "runs right close" to the house in which defendants Gore reside. Plaintiffs' witness James Alonzo Simmons had known of the now disputed way since he settled in that community about 1939 or 1940; and, during a period of some ten to twelve years while he "was raising [his] family down on Ten Mile," they traveled the now disputed way not only "for haircuts" but also to visit Mr. Smith, who was "a special friend." During the same period, "the public in general [used] that road" and it was never closed to his knowledge.

Plaintiffs William C. and Emma J. Connell, who had not resided in that neighborhood previously, moved onto their tract May 10, 1966, and thereafter used the now disputed way without complaint or interruption "for over a year" (so plaintiff William said) and until December 31, 1967 (so plaintiffs' son Johnny W. Connell stated), until defendants Gore, without prior notice to or discussion with plaintiffs, closed the way by fencing it at three points, i. e., at the south end along the east-west boundary line between plaintiffs' and defendants' tracts, at the north end near the right-of-way line of Highway 21, and at one intermediate point, and by posting a sign on a tree at the north end stating "This Road Is Closed." The only recorded explanation as to what motivated defendants' conduct is found in the testimony of plaintiffs' son Johnny who stated that, when he talked with defendants Gore, "they said the stock law was going [into] effect and they needed the land for pasture."

Defendants had lived on their tract for twelve to fourteen years prior to trial. As they point out in argument here, defendant Ervin Gore did testify that, while "Barber" Smith was operating his country barber shop, there was "a barbed wire fence" mostly "nailed to trees" along the boundary line between plaintiffs' and defendants' tracts and across the now disputed way, in order "to keep their (sic) stock off of it" because "they [the Smiths] turned [their tract] in to the land office and got pay for lettin' it lay out . . . under the soil bank thing." But there was no showing that the Smiths thereby purposed to, or in fact did, either close the now disputed way or interfere with free and unrestricted travel thereupon. For that matter, defendants' witness Polly Roark, who lived on a tract also adjoining defendants' tract and remembered the same fence, stated on cross-examination "there was a fence there; it was just a wire gap; I don't think he [Smith] had it up." And when asked about "the condition of the fence," defendant Ervin Gore said "it's about all down now because I've cut most of it down."

In its final judgment entered on March 29, 1969, the trial court after generally finding "the allegations of plaintiffs' petition to be true and . . . the issues for the plaintiffs," further found, inter alia, "that plaintiffs have an easement and right of passageway over [defendants' tract] on the old road as the same has been traveled for more than ten years last past" and "that the road, as it now runs, has been used by the public as a road for a period of more than ten years last past, and that such use by the public was and is adverse and not permissive, and . . . that the said use by the public was continuous, uninterrupted, visible and adverse for a period of more than ten years last past." This suggests that the trial court's injunctive decree may have been predicated in part upon a finding of a public road by prescription. Compare Drydale v. Kiser, Mo., 413 S.W.2d 506, 507. Although "the old road" no doubt had become a public road by prescription (see again note 1, supra) it was not established as such upon trial of the case at bar, for that would have required record evidence of adverse user for the statutory period of ten years prior to 1887. George v. Crosno, Mo.App., 254 S.W.2d 30, 34(1); Marshall v. Callahan, Mo.App., 229 S.W.2d 730, 732(2); Jordan v. Parsons, 239 Mo.App. 766, 775, 199 S.W.2d 881, 886(4); State ex rel. McIntosh v. Haworth, Mo.App., 124 S.W.2d 653, 654(1). Nor was "the old road" shown to have been established as a statutory public road [§ 228.190, RSMo 1969, V.A.M.S.], either (a) by order of the county court and user as a public highway for a period of ten years or more, or (b) by public user for ten years continuously *and* expenditure of public money or labor thereon for such period. Contrast State ex rel. Carter County v. Lewis, Mo.App., 294 S.W.2d 954; Wann v. Gruner, Mo., 251 S.W.2d 57.

But, a road may become a public road in yet another manner, to wit, by implied or common-law dedication—a doctrine predicated on equitable estoppel or estoppel in pais [Borchers v. Brewer, 271 Mo. 137, 143, 196 S.W. 10, 12; 1 Elliott, Roads and Streets (4th Ed.) § 137, p. 163], which has found recognition and application in numerous Missouri road cases. E. g., Chapman v. Schearf, 360 Mo. 551, 229 S.W.2d 552; School Dist. No. 84 v. Tooloose, Mo., 195 S.W. 1023; Lozier v. Bultman, Mo. App., 286 S.W.2d 43; Leslie v. Mathewson, Mo.App., 257 S.W.2d 394; Main v. Nash, 212 Mo.App. 689, 245 S.W. 581; Borders v. Glenn, Mo.App., 232 S.W. 1062. "All that is necessary to be shown in [public road] cases is an adverse use on the part of the public, either for a sufficient time to create a bar under the statute of limitations, *or* a user by the public under such circumstances and for such a period of time, with the acquiescence of the owner, as to imply on his part a dedication of the land and a prescriptive right thereto on the part of the public by its acceptance and appropriation as a public highway, all of which may be shown by facts and circumstances, as well as positive proof." School Dist. No. 84 v. Tooloose, supra, 195 S.W. at 1024; Lozier v. Bultman, supra, 286 S. W.2d at 46; Borders v. Glenn, supra, 232 S.W. at 1064.

Plaintiffs' amorphous and prolix petition was framed in such language and included such comprehensive and diverse averments that, with the petition unassailed prior to judgment, the requested relief properly might have been granted thereunder, if it was shown that the now disputed road had become (and still was) a public road *either* under the statute [§ 228.190, RSMo 1969, V.A.M.S.], *or* by prescription, *or* by implied or common-law dedication. Lozier v. Bultman, supra, 286 S.W.2d at 46(2, 3); Emerson v. Treadway, Mo.App., 270 S.W. 2d 614, 621(13, 14), and cases there cited. And since, in this appellate review de novo of a court-tried case, we are adjured that "[t]he judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses" [V.A.M.R. Rule 73.01(d)] and that no judgment shall be reversed unless we believe "that error was committed by the trial court against the appellant[s], materi-

ally affecting the merits of the action" [V.A.M.R. Rule 83.13(b)], the decree under consideration should be affirmed if the record affords support on any of the three above-stated theories. Drydale v. Kiser, supra, 413 S.W.2d at 507(2). Without further evidentiary detail or review, suffice it to declare here our conclusion that the decree is supported upon the theory that the now disputed way became a public road by implied or common-law dedication.

We proceed to defendant's "point" that "the use of the road was not continuous having been abandoned during the last *ten* years." In the "Argument" section of their brief, defendants' counsel first recall our attention (1) to the testimony of witness Webb that, *except for the now disputed way*, the "branch off of the old military road" had been abandoned "for years" prior to trial, (2) to the testimony of defendant Ervin Gore that (a) "about five years" prior to trial on December 2, 1968, to wit, about December 1963, "Barber" Smith "got sick and he couldn't cut hair," and (b) that, while he was "active and up and about," he maintained the hereinbefore-mentioned barbed wire fence along the boundary line between plaintiffs' and defendants' tracts, and (3) to plaintiffs' evidence that defendants fenced the now disputed way in 1967; and counsel close with the statement that "the user had been abandoned and was interrupted in the last *five* years prior to trial."

That there was an abandonment (at some time not fixed by the evidence) of the remainder of the "branch off of the old military road" did not, per se, constitute an abandonment of the now disputed way [Proctor v. Proctor, 222 Mo.App. 21, 4 S.W.2d 882, 888], even though that way now has no outlet to the south and is a cul-de-sac. State ex rel. Carter County v. Lewis, supra, 294 S.W.2d at 958(5), and authorities there cited. And the fact that travel on the now disputed way may have decreased in recent years does not work an abandonment thereof [Oetting v. Pollock,

189 Mo.App. 263, 271, 175 S.W. 222, 224; Littlejohn v. Corey, 254 Mich. 111, 235 N. W. 809], nor affect its status as a public road so long as it is open for use by the public generally and is being used by those who desire or have occasion to use it [Gilleland v. Rutt, Mo.App., 63 S.W.2d 199, 202(8); Dow v. Kansas City Southern Ry. Co., 116 Mo.App. 555, 558, 92 S.W. 744, 745(2)], for the character of a road, as to whether it is public or private, is determined by the extent of the right to use it, and not by the extent to which that right is exercised [Wallach v. Stetina, Mo.App., 28 S.W.2d 389, 390(2); Phelps v. Dockins, Mo.App., 234 S.W. 1022, 1023(4)] or by the quantity of travel over it. Gilleland v. Rutt, supra, 63 S.W.2d at 202(8). The right to use a public road "cannot be surrendered or abandoned, unless all of the public concur therein" [Oetting v. Pollock, supra, 189 Mo.App. at 271, 175 S.W. at 224; State ex rel. Carter County v. Lewis, supra, 294 S.W.2d at 957(7)], and the loss of such right to use may result only "from the acts and doings of the parties entitled to the [road], and not from the adversary or hostile possession of others." Johnson v. Rasmus, 237 Mo. 586, 592, 141 S.W. 590, 591; McEneny v. Gerlach, Mo.App., 142 S.W.2d 1095, 1098(2).

In the case at bar, there was no showing that the now disputed way was not used by all who desired or had occasion to use it prior to defendants' obstruction of the way in 1967, which spawned this litigation. Having in mind that one asserting abandonment of a public road must carry the burden [Rosendahl v. Buecker, Mo.App., 27 S.W.2d 471, 472(4); 39 Am.Jur.2d Highways, Streets and Bridges § 61, l.c. 450] of showing such abandonment by clear and cogent proof [State ex rel. Carter County v. Lewis, supra, 294 S.W.2d at 958(9); McEneny v. Gerlach, supra, 142 S.W.2d at 1098], we are impelled to hold that the trial court cannot be convicted of error for failing to find that the now disputed way had been abandoned.

■ Defendants' "point" that "the use of the road was permissive and not adverse" tends to support, rather than negate, our view that the now disputed way became a *public road by implied or common-law dedication*—a doctrine predicated on equitable estoppel or estoppel in pais [Borchers v. Brewer, supra, 271 Mo. at 142–144, 196 S.W. at 12–13] by reason of "a user by the public under such circumstances and for such a period of time, *with the acquiescence of the owner,* as to imply on his part a dedication of the land and a prescriptive right thereto on the part of the public by its acceptance and appropriation as a public highway, all of which may be shown by facts and circumstances, as well as positive proof." School Dist. No. 84 v. Tooloose, supra, 195 S.W. at 1024. The sole case cited by defendants under this point, i.e., Burnett v. Sladek, Mo.App., 251 S.W.2d 397, in which plaintiffs Burnett sought to enjoin obstruction of a claimed *prescriptive easement over a private roadway,* is neither controlling nor persuasive here. And the same is true with respect to the sole case cited by defendants under the point on alleged abandonment previously discussed, i.e., Bridle Trail Ass'n. v. O'Shanick, Mo.App., 290 S.W.2d 401, in which plaintiffs likewise sought to enjoin obstruction of a claimed *prescriptive easement over a private bridle trail.*

The only other complaint in defendants' brief is that "the court erred in enjoining obstruction of a roadway that was not described with certainty." In presenting this point, counsel overlook or misconceive the nature and purpose of the case at bar. Plaintiffs sought, and the trial court entered, a mandatory injunction requiring removal of obstructions from the now disputed way which was described in plaintiffs' petition as "a well defined roadway" across defendants' tract and was characterized in the court's decree as "the old road

. . . traveled for more than ten years last past" and "the roadway as it now runs . . . ." Of course, the court preliminarily and necessarily ascertained whether or not this was a public road, over which plaintiffs had the right to travel. But inquiry into and determination of this question were collateral to, and for the sole purpose of, resolution of the basic issue as to plaintiffs' entitlement vel non to injunctive relief. Gibson v. Sharp, 364 Mo. 1007, 1008–1009, 270 S.W.2d 721, 723(4, 5); Judge v. Durham, supra, 274 S.W.2d at 249–250; Bates v. Mueller, supra, 413 S.W.2d at 854(1).

■ There was no legal description of defendants' tract and no surveyor's description of the course or route of the now disputed way in plaintiffs' petition, the evidence, or the court's decree. But no such description was essential to the injunctive relief sought and granted, for nothing in the record indicated that plaintiffs or defendants have any difficulty in recognizing and following the route of "the old road" or "the roadway as it now runs" across defendants' tract, plaintiffs did not seek establishment and location of an easement over a precisely-demarcated and legally-described strip [contrast Allen v. Smith, Mo. App., 375 S.W.2d 874, the sole case cited by defendants to this point], and the injunctive decree sought and rendered operates in personam [Gibson v. Sharp, supra, 364 Mo. at 1009, 270 S.W.2d at 723; Boland v. Byrne, Mo.App., 145 S.W.2d 755, 756] and does not run with the land. Ellis v. Powell, Mo., 117 S.W.2d 225; Oliver v. Wilhite, 329 Mo. 524, 527, 45 S.W.2d 1083, 1084(1); The Allocation of Original Appellate Jurisdiction in Missouri, 1964 Wash. U.L.Q. 424, 570–571.

The decree for plaintiffs is affirmed.

TITUS, P. J., and HOGAN, J., concur.